728 A.2d 832 (1999)
321 N.J. Super. 229
Dolores GURRIERI, Plaintiff-Appellant,
v.
WILLIAM ZINSSER & CO., INC., a Corp. or Business Organization, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1999.
Decided May 4, 1999.
*833 Richard B. Livingston, Springfield, for plaintiff-appellant.
Daniel K. Newman, West Orange, for defendant-respondent.
Before Judges KING, WALLACE and NEWMAN.
The opinion of the court was delivered by KING, P.J.A.D.

I
This case involves a claim for damages for personal injuries allegedly arising from inhalation and contact exposure to "BIN PRIMER SEALER Stain-Killer," a product made and sold by defendant William Zinsser & Co., Inc. (Zinsser). The product is described on the label as a "white pigmented shellac." Plaintiff claims the product's vapors caused disabling injuries to her in June 1990. The legal dispute here is over the label's efficacy.
The Law Division judge found the product in compliance with the Federal Hazardous Substance Act (FHSA), 15 U.S.C.A. §§ 1261 to 1278, and granted summary judgment to Zinsser. With some modification of the judge's reasoning, we affirm. We conclude the product complied with the FHSA's labeling requirements and the state common-law claim for damages is barred by federal regulatory preemption.

II
This is plaintiff's second appeal in this case. The record in the first appeal was inconclusive. On April 11, 1996, in an unpublished opinion (A-3185-94T5), we remanded to the Law Division for additional investigation, discovery, and reconsideration of a December 1994 order granting summary judgment in favor of Zinsser on preemption grounds. We conclude the record is now adequate and the matter ripe for disposition.
These facts are pertinent. Plaintiff Dolores Gurrieri opened her own small business, Lori G's Painting and Cleaning Service, on March 6, 1985 in Lincoln Park. She and her employees cleaned and painted units at construction sites and residential premises. The work included stripping wallpaper and other coverings from walls and restoring the natural finish.
*834 Plaintiff needed a product which covered existing stains on walls. She turned to defendant's "BIN PRIMER SEALER Stain-Killer." She bought four gallons of the product and used it for the first time on June 27, 1990, in a residence. She claims to have read the "Directions" on the label before using the product. The "Directions" covered surface preparation, application, drying time, coverage, cleanup, tinting, compatibility, and safety.
A caution or warning on the front of the can stated:
WARNING: FLAMMABLE (SEE OTHER CAUTIONS ON BACK PANEL)
On the back of the can appeared:
CAUTION: FLAMMABLE. Contains alcohol. Keep away from heat, sparks, and open flame. Use with adequate ventilation. Avoid prolonged breathing of vapor or contact with skin. Do not take internally. Close can after using.
KEEP AWAY FROM CHILDREN.
Our primary concern on the first appeal, as on this appeal, was the validity of the federal-preemption defense asserted by Zinsser, which claimed compliance with the FHSA. Both plaintiff and defendant agree that methyl alcohol was the hazardous substance contained in Zinsser's product and within the scope of the FHSA.[1] We concluded at that time, as we do now on this record, that Zinsser's product contained less than 4% methyl alcohol. The "stain-killer" contains about 2% methyl alcohol and did not need to carry the special poison label (skull and crossbones) pursuant to 16 C.F.R. § 1500.14(b)(4) required of products with 4% or more methyl alcohol. At the time of the first appeal, the record was unclear as to whether the FHSA required any other warning label on the product, or perhaps no label at all. Intertwined with this uncertainty were the questions of federal regulatory preemption and a duty to warn in a state common law or statutory product liability context. See Restatement (Third) of Torts: Prods. Liab. § 2(c) at 14 (inadequate instructions or warning) and § 4 at 122, comment e (regulatory compliance) (1998); N.J.S.A. 2A:58C-4 (adequate product warning or instruction); William A. Dreier, The Restatement (Third) of Torts: Products Liability and New Jersey LawNot Quite Perfect Together, 50 Rut. L.Rev. 2059, 2089 (1998).
On the hearing after remand, Zinsser contended no federal standard applied where the product contained less than 4% methyl alcohol. Zinsser also claimed that the FHSA had completely preempted all warning label requirements and the State of New Jersey could apply no requirements of any kind, under common law or otherwise. The plaintiff argued that for products with under 4% methyl alcohol, as here, the state common law or product liability law filled the vacuum left in the absence of a federal standard. Plaintiff relied on an expert who reported that the described label on the "stain-killer" was inadequate, creating a jury question on the issue of liability. Defendant presented no expert on warning or labeling to contradict plaintiff's expert; defendant rested solely on the regulatory-preemption defense. We now conclude that 15 U.S.C.A. § 1261(p) sets the warning-label standard for this concededly "household product" with less than 4% methyl alcohol, available commercially for both retail and industrial consumers. We also conclude that Zinsser's "stain-killer" meets this § 1261(p) federal statutory standard and affirm the grant of summary judgment.

*835 III
In considering preemption claims, we are cautioned by the longstanding presumption that "Congress did not intend to displace state law." Sherman v. Citibank (S.D.) N.A., 143 N.J. 35, 45, 668 A.2d 1036 (1995)(citing Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595 (1981)). Greater restraint applies to preemption of spheres traditionally occupied by the states. Where the field that Congress is said to have preempted has been traditionally occupied by the states, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless there was the clear and manifest purpose of Congress." Id. at 45-46, 668 A.2d 1036 (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Further, "`[p]reemption of state law by federal statute is not favored "in the absence of persuasive reasonseither that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakenly so ordained."'" Hunter v. Greenwood Trust Co., 143 N.J. 97, 102, 668 A.2d 1067 (1995) (quoting Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 264-65 (1981) (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257 (1963))).
The FHSA, 15 U.S.C.A. § 1261(p)(1) provides, in pertinent part, the following labeling standard which we deem applicable to this product:
(p) The term "misbranded hazardous substance" means a hazardous substance... intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of this title or if such substance, except as otherwise provided by or pursuant to section 1262 of this title, fails to bear a label
(1) which states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title....
The FHSA was enacted in 1960.
The purpose of the FHSA was to "provide nationally uniform requirements for adequate cautionary labeling of packages on hazardous substances which are sold in interstate commerce and are intended or suitable for household use." H.R.Rep. No. 86-1861, at 1 (1960), reprinted in 1960 U.S.C.C.A.N. 2833. The FHSA, as first enacted in 1960, did not contain a preemption provision. However, the FHSA was amended in 1966 and a strong preemption provision was added which states:
[I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title].
[15 U.S.C.A. § 1261, note (b)(1)(A) (1998) (emphasis added).]
*836 Additionally, 15 U.S.C.A. § 1262(b), entitled "Reasonable variations or additional label requirements," provides that if the Consumer Product Safety Commission (Commission) finds that the requirements of § 1261(p) are not adequate for the protection of public health and safety in light of a special hazard presented by a hazardous substance, the Commission may establish by regulation reasonable variations or additional label requirements. Any hazardous substance intended as suitable for household use or by children which fails to bear the label in accordance with the regulations made by the Commission is deemed a "misbranded hazardous substance." 15 U.S.C.A. § 1262(b) (1998). As noted, defendant Zinsser's "stain-killer" concededly was a product suitable for household use.
Pursuant to the mandate of 15 U.S.C.A. § 1262(b), the Commission promulgated regulations with regard to specific, especially-hazardous substances. 16 C.F.R. § 1500.14, entitled "Product requiring special labeling under § 3(b) of the Act" states, in pertinent part:
(b) The Commission finds that the following substances present special hazards and that, for these substances, the labeling required by section 2(p)(1) [15 U.S.C.A. § 1261(p)(1) ] of the act is not adequate for the protection of the public health. Under section 3(b) of the act, the following specific label statements are deemed necessary to supplement the labeling required by section 2(p)(1) of the act:
* * *
(4) Methyl alcohol (methanol). Because death and blindness can result from the ingestion of methyl alcohol, the label for this substance and for mixtures containing 4 percent or more by weight of this substance shall include the signal word "danger," the additional word "poison," and the skull and crossbones symbol. The statement of hazard shall include "Vapor harmful" and "May be fatal or cause blindness if swallowed." The label shall also bear the statement "Cannot be made nonpoisonous."

[Emphasis added.]
This special label was not required for Zinsser's "stain-killer," which contained only 2% methyl alcohol. Thus we resort to the applicable alternative standards in § 1261(p)(1) for hazardous substances for use in the household.
The law of federal preemption to a large extent defies useful generalization. The cases are very specific to the regulated subject. See William A. Dreier, Hannah G. Goldman & Eric D. Katz, New Jersey Products Liability & Toxic Torts Law § 6.3-5 at 88 (1999). Two United States Supreme Court cases address the issue of federal preemption inadequate labeling and failure-to-warn claims brought under state law. First, in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court considered whether preemption provisions contained in §§ 4 and 5 of the Federal Cigarette Labeling and Advertising Act of 1965 (1965 Act) and the Public Health Cigarette Smoking Act of 1969 (1969 Act), 15 U.S.C.A. §§ 1331 to 1340, preempted common-law claims against cigarette manufacturers. Section 4 of the 1965 Act made it unlawful to sell or distribute any cigarettes of the United States unless the package had a label stating: "Caution: Cigarette Smoking May Be Hazardous To Your Health." Cipollone v. Liggett Group, Inc., 505 U.S. at 514, 112 S.Ct. at 2616, 120 L.Ed.2d at 421. Section 5 of the 1965 Act, captioned "Preemption," provided in part:
(a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.
(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

[Ibid.]
Later, Congress passed the 1969 Act and replaced § 5(b) of the 1965 Act with this provision:
(b) No requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any *837 cigarettes the packages of which are labeled in conformity with the provisions of this Act.
[Cipollone v. Liggett Group, Inc., 505 U.S. at 515, 112 S.Ct. at 2617, 120 L.Ed.2d at 422.]
Regarding § 5(b) of the 1969 Act, the Supreme Court stated:
The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common-law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."
[Cipollone v. Liggett Group, Inc., 505 U.S. at 521, 112 S.Ct. at 2620, 120 L.Ed.2d at 426 (quoting San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)).]
The Court concluded that the failure-to-warn claims were preempted to the extent that the advertising or promotions should have included additional, more clearly-stated warnings. Cipollone v. Liggett Group, Inc., 505 U.S. at 524, 112 S.Ct. at 2621, 120 L.Ed.2d at 428. However, the Supreme Court also held that claims based solely on negligent testing or research, by contrast, were not preempted. Cipollone v. Liggett Group, Inc., 505 U.S. at 524-25, 112 S.Ct. at 2621-22, 120 L.Ed.2d at 428. Thus, the Supreme Court found specific Congressional intent to preempt common-law claims based on alleged inadequate labeling of cigarette package labels.
In the second pertinent United States Supreme Court case, Medtronic, Inc. v. Lohr, 518 U.S. 470, 474, 116 S.Ct. 2240, 2245, 135 L.Ed.2d 700, 709 (1996), the Court considered whether the Medical Device Amendments of 1976 (MDA) preempted a state common-law negligence claim against the manufacturer of an allegedly defective medical device. The preemption provision of the MDA provides:
(a) General rule
Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement
(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

[21 U.S.C.A. § 360k(a)(1)(2).]
The Court stated that Congress' statutory intent is discerned from the language of the preemption statute and the "statutory framework" surrounding it. Medtronic, Inc. v. Lohr, 518 U.S. at 486, 116 S.Ct. at 2250-51, 135 L.Ed.2d at 716 (citing Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (Kennedy, J., concurring in part and concurring in judgment)). The Court also stated the relevancy of the structure and purpose of the statute as a whole as revealed not only in the text but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law. Medtronic, Inc. v. Lohr, 518 U.S. at 486, 116 S.Ct. at 2251, 135 L.Ed.2d at 716. Regarding this "statute as a whole" analysis, the Supreme Court explained that pursuant to the regulatory scheme established by the MDA, a large portion of the medical devices does not receive anything more than a cursory or superficial review before marketing. Medtronic, Inc. v. Lohr, 518 U.S. at 477-78, 116 S.Ct. at 2247, 135 L.Ed.2d at 711-12.
In light of this, the Supreme Court held the MDA did not preempt plaintiff's failure-to-warn claims and in doing so stated the following:
[T]he predicate for the failure to warn claim is the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use. These general obligations are no more a threat to federal requirements than would be a state-law duty to comply with local fire prevention regulations and zoning *838 codes, or to use due care in the training and supervision of a workforce. These state requirements therefore escape pre-emption, not because the source of the duty is judge-made common-law rule, but rather because their generality leaves them outside the category of requirements that § 360k envisioned to be "with respect to" specific devices such as pacemakers.
[Medtronic, Inc. v. Lohr, 518 U.S. at 501-02, 116 S.Ct. at 2258, 135 L.Ed.2d at 725-26.]
Our State's labeling cases are analytically helpful. In Macrie v. SDS Biotech Corp., 267 N.J.Super. 34, 37, 630 A.2d 805 (App. Div.), certif. denied, 134 N.J. 565, 636 A.2d 522 (1993), plaintiffs were employees of a produce broker who were exposed to Bravo 500, a fungicide manufactured by defendant SDS Biotech Corp. and used by farmers on their crops in the field. The farmer who initially applied the fungicide did not properly follow the application directions supplied by the defendant manufacturer. When the plaintiffs' employer purchased the crops with the fungicide from the farmer, the fungicide particles became airborne, permeated plaintiffs' employer's building, and caused serious injury to plaintiffs' lungs and skin. We addressed the issue of whether plaintiffs' negligence claims were preempted and controlled by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C.A. §§ 136 to 136y. Id. at 44-45, 630 A.2d 805. We stated that FIFRA is a "comprehensive regulatory statute" regulating the use, sale, and labeling of pesticides produced and sold in both intrastate and interstate commerce. Id. at 45, 630 A.2d 805. We observed that FIFRA deals with preemption in the following terms:
(a) In general
A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
[Id. at 45, 630 A.2d 805 (quoting 7 U.S.C.A. § 136v(a), (b)).]
In interpreting this language in FIFRA, we referred to the then-recent United States Supreme Court decision, Cipollone v. Liggett Group, Inc., 505 U.S. at 504, 112 S.Ct. at 2608, 120 L.Ed.2d at 407, regarding federal preemption. We stated that in Cipollone the Supreme Court held that the statutory language of the Public Health Cigarette Smoking Act of 1969, which was similar to § 136v(b) of FIFRA, preempted failure-to-warn damage actions against cigarette manufacturers based on allegedly inadequate or misleading labeling. Macrie v. SDS Biotech Corp., 267 N.J.Super. at 45-46, 630 A.2d 805. We said, however, that both before and after Cipollone, federal courts have been divided over whether FIFRA preempts state law failure-to-warn damage actions based on inadequate labeling. Id. at 46, 630 A.2d 805. We relied extensively on New York State Pesticide Coalition v. Jorling, 874 F.2d 115 (2d Cir.1989), which explained that warnings which pesticide manufacturers and applicators are required to give to persons other than users who are not direct purchasers in order to protect the safety of those persons are not preempted because they are not "labeling" within the meaning of § 136(p)(2) of FIFRA. Macrie v. SDS Biotech Corp., 267 N.J.Super. at 47, 630 A.2d 805. In reliance on this "labeling" versus "warning" distinction, we found there was no federal preemption of state law claims and held that state law may require a pesticide manufacturer to take reasonable steps to assure that persons who handle produce bought directly from farmers who used defendant's fungicide will be warned of its dangers, at least by receiving defendant's brochures prescribed by the E.P.A. Id. at 48-49, 630 A.2d 805.
In Lewis v. American Cyanamid Co., 294 N.J.Super. 53, 56-57, 682 A.2d 724 (App. Div.1996), aff'd as modified, 155 N.J. 544, 715 A.2d 967 (1998)[2], another case involving *839 FIFRA, plaintiff Lewis was burned when the flame from the pilot light of a gas oven or spark from his refrigerator motor ignited gaseous hydrocarbon propellants that were released into the air by plaintiff's use of defendant's aerosol insecticide. We held that plaintiff's claims based on inadequate labeling were preempted by FIFRA. We based our decision on the seminal United States Supreme Court cases, Cipollone v. Liggett Group, Inc., and Medtronic, Inc. v. Lohr. Id. at 64, 682 A.2d 724. We recognized that the two cases reached different results because the Court concluded that the legislative intent reflected in the legislation at issue in Cipollone was different from that reflected in the legislation subject of Medtronic. Ibid. We also stated that unlike the statutes in Cipollone, the Medtronic statute and its implementing regulations did not prescribe any specific language for labeling and its preemption provision did not contain any express statement of an intent to preempt state labeling requirements. Id. at 65, 682 A.2d 724. We stated that Medtronic was also different from Cipollone because the regulatory scheme for the life-dependent medical devices (e.g., pacemakers) in Medtronic received only a superficial review before marketing. Ibid. Against this regulatory background, we concluded this a substantial reason the Supreme Court rejected the manufacturer's preemption defense in Medtronic. Id. at 66, 682 A.2d 724. We found that the preemption provisions of FIFRA were more like the provisions involved in Cipollone than the provisions in Medtronic. Ibid. We also found that FIFRA, similar to the statutes at issue in Cipollone, left unconstrained all state common-law actions for defective products except those based on inadequate labels. Ibid. As a result, we held that plaintiff's failure-to-warn claims were federally preempted. Id. at 67, 682 A.2d 724. See also Hawkins v. Leslie's Poolmart, 965 F.Supp. 566 (D.N.J. 1997) (plaintiff's claims based on inadequate labeling and packaging of container of chlorine tablets were preempted by FIFRA).
In a case very much like the matter before us, Canty v. Ever-Last Supply, Co., 296 N.J.Super. 68, 73, 685 A.2d 1365 (Law Div. 1996), plaintiff was killed and his son was injured when vapors from a lacquer floor sealant, "Lacquer Seal," which they had applied to a hardwood floor, suddenly burst into flames. The primary issue on the summary judgment motion by defendants was whether plaintiff's defective warning claims were preempted by the FHSA, 15 U.S.C.A. §§ 1261 to 1278. Plaintiff's expert submitted a report claiming that the warnings on the Lacquer Seal were "poorly organized" and that the label did not provide adequate information about the flammable nature of Lacquer Seal vapors or the kinds of precautions that users should take concerning how to properly ventilate rooms before using the product. Id. at 75, 685 A.2d 1365. In contrast, the expert for defendant stated the label in question contained conspicuous warnings, detailed instructions, and complied with applicable federal law. Regarding federal preemption of plaintiff's state law claims, Judge Julio M. Fuentes, relying on Cipollone v. Liggett Group, Inc., stated that there must be a clear showing of Congressional intent to supersede state authority because there is a strong presumption against preemption. Id. at 80-81, 685 A.2d 1365. Judge Fuentes recited the preemption provision added to the FHSA through the amendment in 1966:
[I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [the FHSA] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [the FHSA].
[Id. at 81-82, 685 A.2d 1365 (quoting 15 U.S.C.A. § 1261, Historical Note, Effect upon Federal and State Law).]
Applying this section, Judge Fuentes found that the history and purpose of this preemption provision made clear that Congress intended to preempt all state laws which establish cautionary labeling requirements different from those established by the FHSA. Id. at 82, 685 A.2d 1365. In reliance on Cipollone *840 v. Liggett Group, Inc., Judge Fuentes held that where a plaintiff's claim seeks to hold a manufacturer responsible for failing to provide warning labels which are not identical to but stronger than those required under the FHSA, the claim is preempted and fails. Id. at 84, 685 A.2d 1365. However, where a plaintiff does not seek more elaborate labeling requirements, but rather asserts an alleged failure to comply with the FHSA, such a claim would not impose "a labeling requirement" and would not be preempted. Ibid. As a result, Judge Fuentes, based on his perception of the "weight of authority," concluded that a failure-to-warn claim could be brought but only for failure to comply with the FHSA's labeling provisions. Id. at 85, 685 A.2d 1365.
In determining whether defendant's Lacquer Seal product complied with the FHSA, Judge Fuentes recognized that the labeling requirements were contained within the statute and its regulations which provided a "loose" framework of instructions applicable to products that are "hazardous substances" within the meaning of the FHSA. Id. at 86, 685 A.2d 1365. Judge Fuentes also stated that unlike other types of labeling statutes the FHSA and its regulations do not dictate specific warning language but rather provide that a hazardous substance will be considered "misbranded" and noncompliant if the label fails to include certain basic information about the product, its contents, and its proper use. Ibid. In this discussion the judge referred to both 15 U.S.C.A. § 1261(p)(1) and 16 C.F.R. § 1500.3(b)(14). He also found that the Consumer Product Safety Commission (Commission) was the agency which oversees enforcement of the FHSA and it does not require formal approval of a label before a hazardous product may be introduced into commerce. Id. at 91, 685 A.2d 1365. However, as Judge Fuentes noted, the Commission provides sample warnings for certain products. Although there was no specific sample provided for lacquer, the sample warning for "contact adhesives" appeared applicable because these products, like lacquers, have a flash-fire propensity. Ibid. In using and comparing the sample warnings which the Commission formulated for "contact adhesives," he found the label on defendant's product adequately complied with the FHSA requirements. Id. at 92, 685 A.2d 1365.
Also of interest is Busch v. Graphic Color Corp., 169 Ill.2d 325, 214 Ill.Dec. 831, 662 N.E.2d 397, cert. denied, Busch v. Amrep, Inc., 519 U.S. 810, 117 S.Ct. 55, 136 L.Ed.2d 18 (1996), where plaintiff's decedent died as a result of inhalation of methylene chloride after using "Misty Paint Stripper" manufactured by defendant AMREP. In applying Cipollone and its progeny, the Illinois Supreme Court found that the FHSA's preemption provision precludes common-law tort claims which seek to impose cautionary labeling requirements different from the FHSA and which were designed to protect against the same risk of illness or injury as those imposed by the FHSA. Id. at 406, 214 Ill. Dec. 831, 662 N.E.2d 397. The Illinois court also stated that despite the fact the provisions of 15 U.S.C.A. § 1261(p) are couched in general terms encompassing every type of hazardous substance, they are nonetheless requirements for the cautionary labeling of hazardous substances which included defendant's Misty Paint Stripper. Id. at 407, 214 Ill.Dec. 831, 662 N.E.2d 397. The court also noted that Congress made this clear as it referred to the provisions of § 1261(p) as cautionary-labeling "requirements" in the language of the FHSA's preemption provisions. Ibid. (citing 15 U.S.C.A. § 1261 note (b)(1)(A) (1988)). Further, the court found that the Consumer Product Safety Commission, the federal agency responsible for administering the FHSA, offered a detailed exemplar label for paint-stripper products containing methylene chloride which the Commission concluded conformed to the labeling requirements set forth in § 1261(p) of the FHSA. Ibid. The court also found that the Commission had concluded that its detailed labeling example satisfied the cautionary labeling requirement of § 1261(p) of the FHSA. Ibid. In finding that the label on defendant's product was virtually identical to the exemplar label provided by the Commission, the court stated that labeling requirements which plaintiff sought to impose on defendant were not "identical" to the labeling required under 15 U.S.C.A. § 1261(p)(1). *841 This resulted in preemption of plaintiff's failure-to-warn claims. Busch v. Graphic Color Corp., 169 Ill.2d at 345, 214 Ill.Dec. 831, 662 N.E.2d at 407-08. See also Moss v. Parks Corp., 985 F.2d 736 (4th Cir.), cert. denied, 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 693 (1993)(common-law tort action based upon failure to warn may only be brought for non-compliance with existing federal labeling requirements; if plaintiff requires a more elaborate or different label than required by the FHSA and its regulations, the claim is preempted); Salazar v. Whink Products Co., 881 P.2d 431 (Colo.App.1994), cert. denied, 514 U.S. 1004, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995)(to the extent that plaintiff sought additional, different or more clearly-stated warnings, claim was expressly preempted by the FHSA); see also Kirstein v. W.M. Barr & Company, Inc., 983 F.Supp. 753, 760-61 (N.D.Ill.1997) (same as to adhesive remover), affirmed, 159 F.3d 1065 (7th Cir.1998); Comeaux v. National Tea Co., 81 F.3d 42, (5th Cir.1996) (warning on naphtha lighter fluid complied with FHSA and state claim for defective warning preempted).
In the present case, the 1966 preemption amendment to the FHSA interpreted in light of the intent of Congress to provide "nationally uniform requirements for adequate cautionary labeling," as expressed with the passage of the FHSA in 1960, demonstrates Congress' specific design to preempt state failure-to-warn labeling claims. H.R.Rep. No. 86-1861, at 1 (1960), reprinted in 1960 U.S.C.C.A.N. 2833. This conclusion is also supported by the Supreme Court's reasoning in Cipollone which is doctrinally similar to the present case. Both situations demonstrate strong Congressional language supporting a policy of federal labeling preemption. Similar to the circumstances in Lewis, Canty, and Busch, the plaintiff in the present case proposes additional label warnings not "identical" to the labeling requirements under the federal act. Specifically, plaintiff urges through her expert that additional warnings not required by the federal law, were necessary on products containing less than 4% of methyl alcohol. As in Lewis, Canty, and Busch, to the extent plaintiff proposes additional, different, or more clearly-stated warnings, these claims are preempted by the FHSA.
In the present case, both 15 U.S.C.A. § 1261(p) and the regulations provided in 16 C.F.R. § 1500.14, promulgated pursuant to 15 U.S.C.A. § 1262(b), address the labeling of hazardous or dangerous substances. As stated previously, 16 C.F.R. § 1500.14 entitled "Product requiring special labeling under § 3(b) of the Act" specifically addresses additional labeling (e.g., "danger," "poison," the "skull and crossbones symbol," "Vapor harmful," and "May be fatal or cause blindness if swallowed") required when 4% or more of methyl alcohol by weight is contained in a product. A finding that specific local warnings pursuant to state law must apply to products containing less than 4% of methyl alcohol would create a system of possibly fifty or more different labeling requirements throughout the country, contrary to Congress' obvious intent in passing the FHSA to "provide nationally uniform requirements for adequate cautionary labeling." House Comm. On Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R.Rep. No. 86-1861 at 1 (1960), reprinted in 1960 U.S.C.C.A.N. 2833. We reject this result.

IV
We conclude that the controlling standard for this "stain-killer," a toxic but non-poisonous hazardous substance and a household product containing less than 4% methyl alcohol, is found in these subsections of 15 U.S.C.A. § 1261(p) of the FHSA,
(1) which states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative *842 statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title....
Unlike the situation in Busch v. Graphic Color Corp., 169 Ill.2d at 342, 214 Ill.Dec. 831, 662 N.E.2d at 406, there is no specific label exemplar provided by the federal Commission for products with less than 4% methyl alcohol, such as the "stain-killer" in this case.
We conclude as a matter of law that Zinsser's "stain-killer" generally and adequately complies with § 1261(p) because the label "states conspicuously" all the necessary statutory elements for this product and this use:
1. The name and place of business of the manufacturer: "William Zinsser & Co., Inc., 39 Belmont Drive, Somerset, N.J. 08875."
2. The common chemical name of the hazardous substance  "alcohol."
3. A DANGER label is not applicable here as the product is not "highly toxic," as in 16 C.F.R. § 1500.14 regulated products.
4. The signal words CAUTION and WARNING are present.
5. An affirmative statement of the principal hazard or hazards and precautionary measures describing the action to be followed or avoided is present.
WARNING: FLAMMABLE (SEE OTHER CAUTIONS ON BACK PANEL)
CAUTION: FLAMMABLE. Contains alcohol. Keep away from heat, sparks, and open flame. Use with adequate ventilation. Avoid prolonged breathing of vapor or contact with skin. Do not take internally. Close can after using.
KEEP AWAY FROM CHILDREN.
We also conclude that the statements required by § 1261(p)(1) comply with the standard of § 1261(p)(2) because the graphics "are located prominently and are in the English language in conspicuous and legible type in contrast by topography, layout or color with other printed matter on the label." The lettering on the Zinsser can is red or black type on a white background.
Plaintiff's expert claims that the Zinsser can of "stain-killer" should have had a more detailed, elaborate, or amplified warning than required by § 1261(p). Plaintiff's expert, Leslie Z. Lefkovic's report of September 28, 1993 stated:
The B-I-N label states "use with adequate ventilation, avoid prolonged breathing of vapor or contact with skin." This is a watered down, vague and inadequate warning for a person using this product. This label does not explain in adequate terms what adequate ventilation is. The manufacturer is in the best position to indicate the correct ventilation. It is reasonably foreseeable that the user will apply the product in the manner described by Ms. Gurrieri. As a result of her reasonable use of the product as foreseeable by the manufacturer she was probably exposed to hazardous vapors at concentrations much higher than those permitted by OSHA.
There is no indication that she misused the product or used it in a manner inconsistent with the directives as reasonably expected by the manufacturer for a consumer or user of the product.
The label should emphasize much stronger the need of open windows and doors and of use of other means to ensure entry of fresh air like a fan with explosion proof motor and or use of NIOSH approved gas masks.
SKIN AND EYE CONTACT
The deposition transcript indicates that there was dripping in her eye. This should have been anticipated by the manufacturer.
The B-I-N label states "Avoid contact with skin"
Again the label should warn the user of the hazard before any contact with skin and advise to use goggles and gloves. This was not done on this product.

*843 INGESTION
The third part of the health effect warning is ingestion, which is self-explanatory.
CONCLUSION
In an effect [sic] within reasonable probability, the product was labeled inadequately to warn the user of the proper precautions when using this product which contains hazardous substances.
Ultimately, this case as presented to us boils down to a quarrel about the efficacy of the warning label. We conclude that the label used by defendant Zinsser met the standard set by 15 U.S.C.A. § 1261(p) of the FHSA as a matter of law. Plaintiff's expert may not impose a more stringent standard than federal law; state product-liability law may not require a more vigorous or detailed warning standard.
Affirmed.
NOTES
[1] The FHSA defines "hazardous substance" as:

(f) The term "hazardous substance" means:
(1)(A) Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.
[15 U.S.C.A. § 1261(f)(1)(A).]
The FHSA defines "toxic" as:
(g) The term "toxic" shall apply to any substance (other than a radioactive substance) which has the capacity to produce personal injury or illness to man through ingestion, inhalation, or absorption through any body surface.
[15 U.S.C.A. § 1261(g).]
[2] The Supreme Court of New Jersey affirmed our decision to dismiss plaintiff's failure-to-warn claims but modified our judgment by remanding for retrial on the issues of plaintiff's comparative fault and defendants' liability.