755 A.2d 649 (2000)
333 N.J. Super. 332
STATE of New Jersey, Plaintiff-Appellant,
v.
Michael C. RACKIS, Defendant-Respondent.
State of New Jersey, Plaintiff-Appellant,
v.
Ian Bagnell, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2000.
Decided August 1, 2000.
*650 Janet Flanagan, Deputy Attorney General, argued the cause for plaintiff-appellant (John J. Farmer, Jr., Attorney General of New Jersey; attorney; Ms. Flanagan, of counsel and on the brief).
Evan F. Nappen, Morristown, argued the cause for defendants-respondents (James H. Maynard & Associates, attorneys; Mr. Nappen, on the brief).
Before Judges MUIR, Jr., WALLACE, Jr., and CUFF.
The opinion of the court was delivered by CUFF, J.A.D.
This appeal raises the narrow issue of whether 15 U.S.C.A. § 5001, which prohibits states from banning the sale, other than to minors, of traditional BB guns, paint ball, or pellet-firing guns, preempts N.J.S.A. 2C:39-5b (possession of a handgun without a permit) and N.J.S.A. 2C:39-7b (possession of a handgun by a convicted felon) in so far as those statutes include BB guns among the weapons within the sweep of each statute. The motion judge concluded that the federal statute preempted application of the state statute and dismissed the indictment as to defendant Rackis and counts three and five of the indictment as to defendant Bagnell. We have consolidated these appeals solely for the purpose of the opinion. We reverse.
On February 18, 1999, defendant Michael C. Rackis was charged by a Monmouth County Grand Jury with second degree unlawful possession of a firearm (a *651 Crosman BB pistol) by a convicted felon contrary to N.J.S.A. 2C:39-7b and third degree unlawful possession of a handgun without a permit contrary to N.J.S.A. 2C:39-5b.
On March 10, 1999, defendant Ian Bagnell was charged by a Monmouth County Grand Jury with third degree possession of a controlled dangerous substance contrary to N.J.S.A. 2C:35-10a(1), fourth degree tampering with physical evidence contrary to N.J.S.A. 2C:28-6(1), third degree possession of a handgun without a permit contrary to N.J.S.A. 2C:39-5b, and fourth degree possession of a prohibited weapon, a cestus[1], contrary to N.J.S.A. 2C:39-3(3), and second degree unlawful possession of a firearm (a BB gun) by a convicted felon contrary to N.J.S.A. 2C:39-7b.
Defendant Rackis moved to dismiss his indictment in its entirety; defendant Bagnell moved to dismiss counts three and five of his indictment. In an oral opinion, the motion judge relied on Coalition of New Jersey Sportsmen v. Florio, 744 F.Supp. 602 (D.N.J.1990) and proceeded to declare N.J.S.A. 2C:39-5b and 2C:39-7b unconstitutional as to the possession of BB guns "because it has been preempted by [15] U.S.C.[A.] [§ ] 5001 as it applies to B-B guns." The State argues there is a fundamental difference between prohibition of the sale of a particular weapon and regulation of the possession of weapons. The State contends defendants were required to obtain a handgun permit, N.J.S.A. 2C:58-4, and that the requirements for the permit are not onerous and cannot be considered a de facto prohibition of the sale of such weapons. We agree and reverse the orders dismissing the weapons offenses.
This State has adopted a two step procedure governing the acquisition and possession of handguns. In order to acquire a handgun, the purchaser must obtain a firearms purchaser identification card. N.J.S.A. 2C:58-3. In order to carry a handgun, a person must obtain another permit.
In order to obtain that permit, a person must first complete an application endorsed by three reputable persons who have known the applicant for at least three years preceding the date of application and who can certify the applicant is "a person of good moral character and behavior." N.J.S.A. 2C:58-4b. The application is submitted to the chief police officer of the municipality where the applicant resides. The applicant must be fingerprinted and give the officer a complete description of every handgun the applicant intends to carry. N.J.S.A. 2C:58-4c.
The application will not be approved unless the applicant demonstrates familiarity with the safe handling and use of handguns and provides a justifiable reason to carry a handgun. Ibid. The application will not be approved if the applicant is subject to certain disabilities, including conviction of a crime. N.J.S.A. 2C:58-3c(1). Once the application is approved, the Superior Court in any county in which the applicant intends to carry the handgun may issue the permit. The court has the discretion to limit the permit as to type of handgun and under what circumstances the handgun may be carried. N.J.S.A. 2C:58-4d.
On the other hand, if the weapon falls within the definition of machine guns or assault firearms, see N.J.S.A. 2C:39-1i and 2C:39-1w, an additional licensure procedure is invoked. First, the person must qualify to obtain a handgun permit under N.J.S.A. 2C:58-4. Then he must file a written application in the Superior Court in the county in which he resides or conducts his business setting forth detailed reasons for desiring a license to possess and carry a machine gun or assault firearm. N.J.S.A. 2C:58-5a. The court then refers the application to the county prosecutor who conducts a complete investigation and prepares a recommendation to the court. Ibid. Based upon the prosecutor's recommendation, the court may issue a *652 license if the person, as noted above, meets the qualifications for a permit to carry a handgun and if the court expressly "finds that the public safety and welfare so require." N.J.S.A. 2C:58-5b. The court may also impose any conditions and/or limitations in issuing the license "as it deems to be in the public interest." N.J.S.A. 2C:58-5d. The license, once issued, expires after two years from the date of issuance and may be renewed in the same manner and with the same conditions as when the applicant originally applied. N.J.S.A. 2C:58-5g. The filing fee for the license is $75.00 with each application. N.J.S.A. 2C:58-5f.
In Coalition, Judge Brown found that because BB guns fell within the definition of weapons registration as an assault firearm, applicants had to "qualify under two lengthy application procedures ... [where they] may be refused at any time the State determines such a license does not serve the public interest," and that the restrictions created a "de facto prohibition on the sale of B-B and air guns that may fall under New Jersey's statutory definition of semi-automatic firearms." Coalition, supra, 744 F.Supp. at 608. He specifically found that New Jersey's "regulatory scheme vests unbridled discretion over the licensing process with the State." Ibid. He further held this de facto prohibition violated the express language of 15 U.S.C.A. § 5001(g)(ii) which specifically preempts any State law concerning markings and identification of imitation firearms not consistent with the federal law and further provides "that no State shall... (ii) prohibit the sale ... of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure." In essence, Judge Brown severed the assault firearm registration requirements as they apply to BB and air guns. This ruling, however, does not effect the significantly less onerous requirements of obtaining a handgun permit.[2]
Under the Supremacy Clause of the United States Constitution U.S. Const., art. VI, cl. 2, the laws of the United States "shall be the supreme law of the land." As such, state laws that "`interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532, 542 (1991) (quoting Gibbons v. Ogden, 22 U.S. 1, 211, 6 L.Ed. 23, 73-74, 9 Wheat 1 (1824)); see Vail v. Pan Am Corp., 260 N.J.Super. 292, 297, 616 A.2d 523 (App.Div.1992). The primary "focus of analysis is on the intent of Congress." Miranda v. Fridman, 276 N.J.Super. 20, 25, 647 A.2d 167 (App.Div.), certif. denied, 138 N.J. 271, 649 A.2d 1291 (1994). Federal preemption may be express, ibid. (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-96, 103 S.Ct. 2890, 2898-99, 77 L.Ed.2d 490, 500 (1983)), or implied where Congress suggests an intent to occupy an entire field to the exclusion of state legislation. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947); see Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675 (1982) (field preemption occurs where the scheme of federal regulation is "`so pervasive as to make the reasonable inference that Congress has left no room for the State to supplement it[.]'") (citations omitted). Even when it is clear Congress has not fully occupied a field, state law will still be preempted if it is in actual conflict with federal law. Miranda, supra, 276 N.J.Super. at 26, 647 A.2d 167. Thus, state law must yield to federal law where "`compliance with both federal and state regulations is a physical impossibility,' or where state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " Gade v. National Solid Wastes *653 Management Ass'n, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73, 84 (1992) (quoting Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300, 108 S.Ct. 1145, 1150-51, 99 L.Ed.2d 316, 325 (1988)); see R.F. v. Abbott Lab., 162 N.J. 596, 618, 745 A.2d 1174 (2000); Miranda, supra, 276 N.J.Super. at 26, 647 A.2d 167. In determining whether such a conflict exists, this court must analyze "`the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.'" R.F., supra, 162 N.J. at 618, 745 A.2d 1174 (quoting Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604, 614 (1977)).
However, there is a "longstanding presumption that `Congress did not intend to displace state law.'" Gurrieri v. William Zinsser & Co., 321 N.J.Super. 229, 233, 728 A.2d 832 (App.Div.1999) (quoting Sherman v. Citibank (S.D.) N.A., 143 N.J. 35, 45, 668 A.2d 1036 (1995)); see also Turner v. First Union Nat'l Bank, 162 N.J. 75, 88, 740 A.2d 1081 (1999) (preemption of state law "`is not to be lightly presumed.'") (citation omitted); Township of Chester v. Panicucci, 116 N.J.Super. 229, 235, 281 A.2d 811 (App.Div.1971) ("preemption is not to be lightly inferred....") (citation omitted), aff'd, 62 N.J. 94, 299 A.2d 385 (1973). Moreover, courts are cautioned to exercise restraint in applying preemption to "spheres traditionally occupied by the states." Gurrieri, supra, 321 N.J.Super. at 233, 728 A.2d 832. A "federal-state balance" should be maintained especially when a state statute involving public safety is challenged because there is a well-established presumption "that the historic police powers of the States were not to be superseded by the [federal law] unless there [is] the clear and manifest purpose of Congress." Sherman, supra, 143 N.J. at 45-46, 668 A.2d 1036; see Gurrieri, supra, 321 N.J.Super. at 233, 728 A.2d 832. Further, in the absence of persuasive reasonswhere either Congress explicitly mandates a preemption or where no other conclusion can be drawn from the nature of the regulated subject matterfederal preemption of state law is simply not favored. Gurrieri, supra, 321 N.J.Super. at 233-34, 728 A.2d 832 (citation omitted).
Here, the classification of BB guns as a handgun does not bar acquisition of the weapon and the requirement that a person must obtain a permit to carry a BB gun is not onerous. A person of good character and good repute in the community in which he lives cannot be denied a permit to purchase a handgun or a firearms purchaser identification card. N.J.S.A. 2C:58-3c. To carry a handgun, such as a BB gun, a person must also demonstrate familiarity with the weapon and a justifiable need to carry the weapon. N.J.S.A. 2C:58-4c. Nothing in these requirements constitutes a prohibition against the sale or possession of a BB gun. To be sure, a person convicted of a crime will not be issued a handgun purchase permit or firearms purchaser identification card, N.J.S.A. 2C:58-3c(1), and a permit to carry a handgun will not issue to a person disqualified from obtaining such cards. N.J.S.A. 2C:58-4c. However, neither the legislative history of 15 U.S.C.A. § 5001(g)(ii), nor general principles of preemption suggest that areas traditionally reserved to the states, such as the regulation of the possession and use of handguns by convicted felons, was intended to be superceded by § 5001(g)(ii).
15 U.S.C.A. § 5001 governs penalties for the entry into commerce of imitation firearms. Section 5001 was introduced by the Senate as an amendment to House Amendments to the Federal Energy Management Improvement Act of 1988. Section 5001 specifically governs the "Penalties for Entering Into Commerce of Imitation Firearms" and required "each toy, look-alike, or imitation firearm [to] have as an integral part, permanently affixed, a blaze orange plug inserted in the barrel of such toy, look-alike, or imitation firearm." 15 U.S.C.A. § 5001(b)(1). The statute explicitly exempted from the definition of "look-alike" firearms all "non-firing, collector *654 replica of an antique firearm developed prior to 1898, or traditional B-B, paint-ball, or pellet-firing air guns that expel a projectile through the force of air pressure." 15 U.S.C.A. § 5001(c).
The hearing held before the House Sub-Committee on Commerce, Consumer Protection, and Competitiveness on August 11, 1988, provides some insight as to the intent and rationale supporting § 5001. At the hearing, the primary debate was whether the Sub-Committee should recommend a bill proposed by Congressman Levine of California, which would have enacted a total ban on the manufacture and sale of imitation firearms, or whether the Sub-Committee should recommend the bill ultimately enacted which was proposed by Senator Dole of Kansas. The Dole bill required toy and imitation gun manufacturers to put special markings on the guns so that the guns could be easily recognized as imitation. It created a federal standard for toy gun marketing not to be disturbed or modified by state law. As Judge Brown noted in Coalition, which also referenced the legislative history, the underlying intent of § 5001 is relatively obvious:
`The potential hazards and misuses of an object that resembles a deadly weapon ought to be evident to everyone. A person threatened with such an object can scarcely conduct a detailed examination to determine whether it is in fact real. Similarly, a police officer can hardly be expected to make a detailed inquiry concerning just how real the object in the hands of an adversary is before firing his gun. For these reasons, misuse of toy guns presents a real hazard and a problem that needs to be addressed.'
[Coalition, supra, 744 F.Supp. at 607 (quoting 134 Cong. Rec. H10071 (daily ed. October 12, 1988) (statement of Rep. Moorhead)) ].
It is clear that the concerns raised with regard to federal preemption focused solely on whether federal legislation should preempt state law as to a complete ban of toy guns and the marketing standards applicable to these items. The debate did not entail discussion as to whether federal law should supercede state law which attempts to regulate real guns. 15 U.S.C.A. § 5001(g)(ii).
The primary intent of the federal statute is to ensure public safety by requiring imitation firearm manufacturers to mark their toy guns with special markings which would aid in the discernment of the toys' "look-alike" nature. In making this a federal standard, Congress purposely rejected Congressman Levine's total ban on imitation firearms. Congress, however, specifically exempted from the category of imitation firearms all look-alike non-firing collector replicas, BB guns, pellet-firing air guns, paint ball guns and any other air gun that expels a projectile through the force of air pressure. Because Congress severed these specific guns from the "look-alike firearm" definition, states could ban them completely because the federal standard for the sale and manufacture of imitation firearms would not apply to those guns. Therefore, in order to protect manufacturers and the rights of the public to buy and possess such guns, Congress enacted a specific proviso precluding states from prohibiting the sale of antique replicas and pellet-firing air guns. Notably, the express language of § 5001(g) only precludes states from prohibiting the sale of such guns and is silent as to whether a state can in fact regulate who can obtain these guns.
As noted above, "`pre-emption is not to be lightly presumed and ... the historic police powers of the States are not to be superceded by federal law unless that was the clear and manifest purpose of Congress.'" Village of Ridgefield Park v. New York, Susquehanna and Western Railway Corp., 163 N.J. 446, 453, 750 A.2d 57 (2000) (quoting Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615, 725 A.2d 1104 (1999)). Moreover, when police powers are involved, Congress will typically *655 express that it "wishes to restrain all local action in a certain field." Township of Chester, supra, 116 N.J.Super. at 237, 281 A.2d 811. Gun control law is a proper and reasonable exercise of the State's police powers. Burton v. Sills, 99 N.J.Super. 459, 461, 240 A.2d 432 (App.Div.), aff'd, 53 N.J. 86, 248 A.2d 521 (1968).
Here, it is clear that N.J.S.A. 2C:39-7b and 2C:39-5b regulating possession of handguns are two statutes within New Jersey's gun control scheme and within this State's traditional police powers. It is also clear that although Congress preempts any state law which attempts to prohibit the sale of BB guns, Congress has neither explicitly nor implicitly prohibited states from regulating the use and possession of BB guns. Indeed, the Gun Control Act of 1968, 18 U.S.C.A. § 921-930, explicitly disavowed any intent to occupy the field of gun control to the exclusion of state police powers. The Gun Control Act governs all aspects of firearm control including unlawful acts, licensing, penalties, exceptions, relief from disabilities, and rules and regulations. Nevertheless, Congress expressly stated the Gun Control Act's effect on state law as follows:
No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

[18 U.S.C.A. § 927.]
Further, "[t]he legislative history of the Gun Control Act indicates that its principal purpose is to strengthen Federal controls and `to assist the States effectively to regulate firearms within their borders.'" Oefinger v. Zimmerman, 601 F.Supp. 405, 412 (W.D.Pa.1984) (quoting 3 U.S.Code Cong. & Admin. News 1968 at 4411), aff'd, 779 F.2d 43 (3d Cir.1985).[3]
15 U.S.C.A. § 5001, like the Gun Control Act of 1968, purports to protect society and the general public from firearm-related perils. Given Congress' express intent in the Gun Control Act favoring regulation of gun control on the local level, we conclude that Congress did not intend to preclude states from regulating the possession and use of BB guns by the sub-provision of the imitation gun markings statute which disallows states from prohibiting a total ban of the sale of BB guns.
In summary, the handgun permit procedure established by N.J.S.A. 2C:58-3 constitutes neither an express nor de facto ban on the sale or possession of BB guns. Furthermore, the legislative history of the federal statute does not manifest any intention to preempt state gun control regulations or to override the stated policy of federal law governing gun control. Therefore, we conclude that neither N.J.S.A. 2C:39-5b, which makes it a criminal offense to carry a BB gun without a permit to carry a handgun, nor N.J.S.A. 2C:39-7b, which makes it a criminal offense for a convicted felon to carry a BB gun, have been preempted by federal statute. Accordingly, the order dated November 5, 1999, dismissing the indictment as to defendant Rackis and the order dated November 1, 1999, dismissing counts three and five of the indictment as to defendant Bagnell are reversed and are remanded for trial.
Reversed and remanded for trial.
NOTES
[1] A cestus is a hand covering of leather bands often loaded with lead or iron.
[2] BB guns also fall within the category of handguns. State v. Mieles, 199 N.J.Super. 29, 37, 488 A.2d 235 (App.Div.), certif. denied, 101 N.J. 265, 501 A.2d 933 (1985); see Cannel, New Jersey Criminal Code Annotated, comments 7 and 12 on N.J.S.A. 2C:39-1 (1999).
[3] The Third Circuit in Oefinger, supra, was reviewing whether the federal scheme to license and regulate interstate traffic in firearms displaced the power of the State of Pennsylvania from determining certain "offensive weapons" should not be possessed within its boundaries. The Third Circuit affirmed the district court's holding that the federal legislation governing firearms in the Gun Control Act was not designed to supersede state efforts to enact and enforce more stringent state gun control laws. Oefinger, supra, 601 F.Supp. at 412.