276 N.J. Super. 20 (1994)
647 A.2d 167
JUSTO A. MIRANDA AND MARTHA MIRANDA, MANUEL ARAUJO AND MARTHA ARAUJO, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
SHULIM FRIDMAN, RICHARD E. WALLINGFORD, SHORTLINE TERMINAL, INC. A/K/A SHORTLINE TERMINAL AGENCY, INC., HUDSON TRANSIT LINES, CORP., HUDSON TRANSIT LINES, INC. AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANTS-APPELLANTS, AND HYUNDAI MOTOR AMERICA, INTERVENOR-RESPONDENT. SHORTLINE TERMINAL AGENCY, INC., HUDSON TRANSIT LINES AND RICHARD WALLINGFORD, PLAINTIFFS-APPELLANTS,
v.
HYUNDAI GROUP, HYUNDAI CORPORATION, HYUNDAI MOTOR COMPANY, PARAGON HYUNDAI, HYUNDAI MOTOR AMERICA AND JOHN DOE CORPORATION (1-10) (NAME FICTITIOUS), AND RICHARD ROE COMPANY (1-10) (NAME FICTITIOUS), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1994.
Decided July 21, 1994.
*22 Before Judges R.S. COHEN, D'ANNUNZIO and WALLACE.
George Allison argued the cause for appellants (James D. Butler, attorney, Mr. Allison on the brief).
Stephen F. Payerle argued the cause for respondent Hyundai Motor America (Carpenter, Bennett & Morrissey, attorneys, Robert M. Goodman of counsel, and Anne M. Dalena and C. Brian Kornbrek, on the brief).
David S. Lafferty argued the cause for respondent Paragon Hyundai (Breslin & Trovini, attorneys, Mr. Lafferty, on the letter brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
These appeals result from rulings that damage claims for alleged auto defects were preempted by federal law. We heard them together, and now consolidate them for the purpose of decision.
The injured occupants of a 1987 Hyundai Excel and their spouses sued the driver and owners of a bus ("the bus defendants") that hit the Hyundai. During most of the discovery *23 period, the parties were under the impression that the Hyundai was equipped with lap and shoulder belts. There was a factual dispute whether the occupants were wearing them.
Just weeks before trial, almost three years after suit was started, it was discovered that 1987 Hyundai Excels were equipped with automatic shoulder harnesses, but not lap belts. The bus defendants immediately moved to file a third-party complaint for contribution and indemnification, charging the Hyundai defendants ("Hyundai") with making and marketing a defective car. The motion was denied. The reason for denial was that defendants' claim was preempted by federal law. Plaintiff's argument that the motion came too late was not ruled on.
The original parties then settled the personal injury claims, and the bus defendants filed a separate action against Hyundai for contribution and indemnification. Hyundai moved to dismiss not only on the thesis that the cause of action was preempted by federal law, but also because the preemption issue had already been decided in the first case. The same judge heard argument, and indicated she thought the matter was precluded by her decision in the first case. She was then told that her decision had been appealed. "Excellent," she replied, "Then my dismissing this complaint will not harm you. And I dismiss it." The rulings in both cases have been appealed.
Both of the orders entered in these cases were procedurally improper. The motion to file a third-party complaint in the first case should not have been denied on the ground that the proposed cause of action was preempted by federal law. R. 4:8-1(b) describes the manner and terms on which a third-party defendant asserts defenses after being joined and served. When a defendant moves to file a third-party complaint, the proposed third-party defendant is not yet a party. The motion is addressed to the judge's discretion, and should be considered sympathetically, in order to avoid a circuity of actions. Newmark v. Gimbel's, Inc., 54 N.J. 585, 600-01, 258 A.2d 697 (1969). However, the motion may be denied if granting it would unduly complicate or *24 delay the trial or otherwise prejudice the parties, particularly if the defendant's cause of action will survive to support a separate action. See Du-Wel Products, Inc., v. U.S. Ins. Co., 236 N.J. Super. 349, 364, 565 A.2d 1113 (App.Div. 1989), certif. denied, 121 N.J. 617, 583 A.2d 316 (1990); Scott v. Garber, 82 N.J. Super. 446, 451, 198 A.2d 103 (App.Div. 1964).
A motion to file a third-party complaint should not be denied on the thesis that a potential defense to the proposed complaint would be successful. The complaint has not yet been filed, and defenses have not yet been made. It is for the third-party defendant to decide whether or not to make a particular defense, when to make it, and in what manner to make it. It is not for the judge to make those determinations in favor of a party not yet in court any more than it would be for the judge to reject a possible defense before it is made.
The order dismissing the complaint in the second case was entered solely on the basis of the first decision. The doctrines of res judicata and collateral estoppel apply only after the party to be foreclosed has had a full and fair opportunity to litigate the matter. See Taha v. DePalma, 214 N.J. Super. 397, 400, 519 A.2d 905 (App.Div. 1986); Zoneraich v. Overlook Hospital, 212 N.J. Super. 83, 93-95, 514 A.2d 53 (App.Div.), certif. denied, 107 N.J. 32, 526 A.2d 126 (1986). Here, the preemption issue was first raised in plaintiffs' brief opposing the bus defendants' motion to file the third-party complaint against Hyundai. The brief was served on them on the day of oral argument, and the issue was prematurely considered by the judge. Those circumstances mandate that the bus defendants be afforded a thorough consideration of the issue.
The National Traffic and Motor Vehicle Safety Act of 1966 authorized the Secretary of Transportation to write and administer federal motor vehicle safety standards ("FMVSS"). 15 U.S.C.A. § 1391(2); 1392(a). One of them was FMVSS 208, which generally addressed crashworthiness standards. The Act and the FMVSS demonstrated Congress's purpose that the responsibility for automobile safety standards belonged to the federal government, *25 with the states having only a "consultative role" in the process. S.Rep. No. 1301, 89th Cong., 2d Sess. 4 (1966), reprinted in, 1966 U.S.Code Cong. & Admin.News 2709, 2712.
FMVSS 208, in the years relevant to this case, gave manufacturers three options for protecting front-seat automobile occupants, compliance with any one of which would satisfy the federal standard:
1. Passive protection from frontal and angular collisions, which would include automatic shoulder harnesses without lap belts;
2. passive protection from head-on collisions, supplemented by seat belts and a belt warning system; or
3. lap and shoulder belts, plus a belt warning system.
[Wood v. General Motors, Corp., 865 F.2d 395, 399 (1st Cir.1988), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990)].
The 1987 Hyundai Excel complied with the first option by providing automatic (passive) shoulder harnesses without lap belts. In the present case, the bus defendants allege a product defect resulting from Hyundai's making that design choice. They do not charge that the harness was an improperly designed harness,[1] or that there were manufacturing defects, or that the design compromised FMVSS 208, or that there was an idiosyncracy of the Hyundai that rendered the choice unsuitable for that particular car.
Preemption of state law by a federal statute arises from the Federal Supremacy Clause. U.S. Const. art. VI, cl. 2. The focus of analysis is on the intent of Congress. Preemption may be explicitly dealt with by the statute. Shaw v. Delta Airlines, Inc., 463 U.S. 85, 95-96, 103 S.Ct. 2890, 2898-99, 77 L.Ed.2d 490, 500 (1983). Preemption may also be inferred where Congress indicates an intent to occupy a field to the exclusion of state law. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, *26 91 L.Ed. 1447 (1947). Even where Congress has not fully occupied a field, state law is preempted when it actually conflicts with federal law, that is, if it is impossible to comply with both state and federal law, or when state law is an obstacle to the accomplishment of the full purposes and objectives of Congress. Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300, 108 S.Ct. 1145, 1150-51, 99 L.Ed.2d 316, 325 (1988).
The 1966 Safety Act contains a preemption clause and also a general "savings clause." The preemption clause, 15 U.S.C.A. § 1392(d), states, in pertinent part:
Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.
The savings clause, 15 U.S.C.A. § 1397(k),[2] states:
Compliance with any Federal motor vehicle safety standard issued under this chapter does not exempt any person from any liability under common law.
Four United States courts of appeals have applied these provisions to common-law damage actions attacking manufacturers' choices of restraint systems that comply with federal standards; all of them found the damage actions to be preempted. The first was the First Circuit in Wood v. General Motors Corp., 865 F.2d 395 (1st Cir.1988), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). Plaintiff's Chevrolet Blazer was equipped with lap and shoulder belts, plus a warning system, and thus complied with the third option contained in FMVSS 208. The gist of plaintiff's complaint was that GM had not opted for one of the other choices, such as an air bag.
The court of appeals described the Safety Act as "facially ambiguous" as to whether a state product liability claim challenging a manufacturer's choice of a design complying with FMVSS 208 was preempted by § 1392(d) or preserved by § 1397(k). Id. *27 at 401. The court reasoned that plaintiff could win her design defect claim only on a state law ruling that the car was unsafe because it was equipped with one of the federally sanctioned choices, and not another. Id. at 399. Such a ruling, said the court, would create a state safety standard that differed from the federal standard covering the same aspect of performance. Id. at 402, 416-17.
The court rejected an attempt to harmonize the preemption clause and the savings clause by "ascribing to Congress an intent to preempt contradictory state safety standards when promulgated by statute or regulation, but not to preempt such standards when established in the course of a law suit." Id. at 401-02. The court believed it "more plausible" to conclude, after examining the historical setting in which Congress wrote the 1966 Safety Act, that Congress did not foresee such growth of product liability litigation as to impose conflicting state safety standards on the auto manufacturers. Id. at 402. Thus, the court ruled that Congress neither expressly preempted state litigation that would interfere with federal safety standards, nor expressly preserved "the narrow class of design lawsuits that give rise to a conflicting state safety standard." Ibid.
The court went on to conclude that permitting a claim that the absence of an air bag was a design fault was impliedly preempted because it would stand as an obstacle to the regulatory scheme of the Safety Act. The court read Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1983), to affirm that compensatory damage awards had a regulatory effect, and to permit state damage actions only in the unique area of nuclear facility regulation, where there was another federal statute recognizing and regulating state tort awards. On that basis, the court found that its implied preemption thesis was not contrary to Silkwood, and was supported by San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780-81, 3 L.Ed.2d 775, 784 (1959), where the Supreme Court said:

*28 [R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.
Next to deal with the subject was Kitts v. General Motors Corp., 875 F.2d 787 (10th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). There were two cases, both involving claims that restraint systems which complied with FMVSS 208 were nevertheless defective because they did not include air bags. In a brief opinion, the Tenth Circuit "follow[ed] the general principles articulated in Wood and adopt[ed] the implied preemption rule of the First Circuit." Id. at 789.
Next was the Eleventh Circuit opinion in Taylor v. General Motors Corp., 875 F.2d 816 (11th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990), also involving two cases. In each of them, a person was killed in a front-end collision. Both plaintiffs sought to hold the manufacturer liable for failure to install air bags despite the fact that the restraint system in each of the cars complied with one of the three FMVSS 208 options.
The court rejected the argument that the savings clause meant only "that compliance with the federal standards does not protect an automobile manufacturer from liability for design or manufacturing defects in connection with matters not covered by the federal standards." Id. The court felt that such a reading would render the savings clause redundant, since the preemption clause itself says that, where a federal standard does not govern the same aspect of performance as the state standard, the state standard is not preempted.
The court also noted that Congress did not refer to state common law in the preemption clause, although it had done so in other statutes. The court found factually inaccurate the argument adopted in Wood that the 1966 Congress did not foresee such growth of product liability law as to create conflicts with the federal safety standards. Finally, the court made it clear that it concluded "only that the language of the Safety Act is too ambiguous *29 to manifest a Congressional intent to preempt appellants' common law claims ... [or] manifest[] an express intention on the part of Congress to preserve appellants' common law claims." Id. at 825, n. 18.
After finding no express preemption, the court concluded that the effect of permitting state law claims would be to frustrate the federal regulatory scheme by exposing manufacturers to state law damages for doing what the Safety Act and FMVSS 208 authorize. It found support in three U.S. Supreme Court opinions rejecting state law damage claims for the exercise of federally sanctioned choices of conduct. Id. at 827 (citing Fidelity Fed. Sav. & Loan Ass'n. v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981)).
The Third Circuit addressed the issue in Pokorny v. Ford Motor Co., 902 F.2d 1116 (3rd Cir.1990), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). There, a passenger in a Ford van equipped in accordance with FMVSS 208 died in a traffic accident. The van had manual shoulder and lap belts and a buzzer warning system, but decedent apparently did not wear the belts. The gist of the claim was that the van was defectively designed because it did not have air bags, automatic seat belts, or protective netting on the windows.
Pokorny agreed with Taylor that the savings clause should not be read to apply only to matters not covered by the federal safety standards, because the preemption clause itself already excluded those matters. The court also noted, as Taylor did, that the preemption clause failed to mention common law actions. On those bases, the court ruled against express preemption. It also cited the savings clause, and said that "Congress evidently thought that preserving common law liability would further the goal of motor vehicle safety." Id. at 1122.
*30 On the very next page, however, the court said that a state law claim presented an actual conflict with the Safety Act and FMVSS 208 when it alleged liability for not installing air bags or automatic seat belts. Congress gave manufacturers a choice of three restraint systems, and exposing them to state law liability for exercising that choice "interferes with the regulatory methods chosen by the federal government to achieve the Safety Act's stated goals." Id. at 1123. "The Safety Act's savings clause does not change our resolution of the pre-emption issue," the court also reasoned, "since it is well-established that a savings clause like § 1397(k) does not `save' common law actions that would subvert a federal statutory or regulatory scheme." Id. at 1125.
The court accepted the view that permitting state law liabilities would create the same interference as permitting inconsistent state safety standards, and would thus undermine the options for complying with FMVSS 208. To the extent that liability was asserted for failure to provide protective netting over the car windows, however, the damage action was held not to be preempted. It did not present a direct actual conflict with the FMVSS, or frustrate the purpose of the federal regulatory scheme.
The courts of appeals chose varying routes, but they all reached the same result, one which shielded auto manufacturers from state law liability claims for choosing a federally sanctioned restraint system. It was the common sense result, prompted by concern over the effect of permitting juries in fifty states to create as many safety standards as there were verdicts, all binding on car makers when nationally marketing a product approved by the national government. The courts differed only in the manner in which they attempted to reconcile the savings clause and the regulatory effect of state damage verdicts with the clear intent of Congress to insulate manufacturers from state interference with federal safety regulation.
It is not consistent to say with Pokorny that Congress intended the savings clause to preserve state law liability claims, and also that a plaintiff's assertion of those claims presents an impermissible *31 actual conflict with the federal scheme, and is therefore preempted. The facial conflict is manifest, and we therefore infer that Congress was aware of it. Before Cippolone v. Liggett Group, Inc., 505 U.S. ___, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), it seemed sounder to say with Wood, Kitts, and Taylor, that the Safety Act is "facially ambiguous" and thus does not preempt state law liabilities, but the context nevertheless requires implied pre-emption.[3]
It is also unconvincing to say with Pokorny that state damage awards for marketing products approved by federal law have a lesser or more indirect regulatory effect than inconsistent state statutes or regulations. The contrary conclusion expressed in Wood, Kitts, Taylor makes much more sense. Their view was recently confirmed by a majority of the Justices of the U.S. Supreme Court in Cipollone. There, the Court dealt with a preemption clause which said:
"No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labelled in conformity with the provisions of this Act."
[Id. at ___, 112 S.Ct. at 2617, 120 L.Ed.2d at 422].
The Court was divided on many aspects of the case. One thing six Justices agreed on, however, was that the quoted clause barred state damage claims asserting product defect for failure to warn where the cigarette package bore the federally required label. The basis for that conclusion in both the plurality opinion and the separate opinion was a recognition of the regulatory effect of *32 permitting state law damage claims. Such claims therefore constituted a "requirement or prohibition."
There is, however, another part of Cipollone which has raised doubts about the continued force of the implied-preemption conclusions of Wood, Kitts, Taylor, and Pokorny. It was the position of seven of the Justices that Congress's enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted. Stated another way, when Congress has included in the legislation a provision explicitly addressing preemption, and when that provision provides "a reliable indicium of congressional intent with respect to state authority," there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation. Id. 505 U.S. at ___, 112 S.Ct. at 2618, 120 L.Ed.2d at 423.
Three of the Justices went further to say that express preemption excludes implied preemption even where Congress has spoken ambiguously. "In such cases, the question is not whether Congress intended to preempt state regulation, but to what extent." Id. at ___, 112 S.Ct. at 2626, 120 L.Ed.2d at 433. (Blackmun, J., concurring and dissenting).
After Cipollone, the Eleventh Circuit abandoned Taylor because Taylor found an implied congressional intent in spite of an express preemption clause, in just the way disapproved by Cippolone. Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir.1994). The Myrick court felt itself bound by the Taylor court's conclusion rejecting express preemption, but bound also to follow Cipollone's prohibition against employing implied preemption where Congress provides a reliable express indicium of its intent. The Myrick court also criticized the notion that ambiguous statutory preemption language was not a reliable indicium. It pointed out that most of the disagreements among the Justices in Cipollone were over the meaning of the somewhat obscure preemption language at issue there.
A district court judge disagreed in Gills v. Ford Motor Co., 829 F. Supp. 894 (W.D.Ky. 1993). He accepted the conclusions of Wood *33 and Taylor that the Safety Act was ambiguous on the subject, and he then reasoned that such ambiguity could not provide a reliable indicium of congressional intent. He went on to hold, alternatively, that the preemption clause itself trumped state damage claims, and that the only function of the savings clause was to preserve "all other liability claims except those otherwise abolished by the preemption clause and covered by the regulation." Id. at 898-99.
Boyle v. Chrysler Corp., 177 Wis.2d 207, 501 N.W.2d 865 (Ct.App.), rev. denied, 510 N.W.2d 137 (Wis. 1993), took a different tack to the same mark. There, the restraint system complied with FMVSS 208, but plaintiff alleged that the car was defective because it had no air bag or other passive restraint. The Wisconsin court concluded that the express preemption clause in the Safety Act covered not only state statutes and regulations, but also the imposition of common-law liabilities, and cited Cipollone for the conclusion. Id. at 869. The court went on to reject the argument that the savings clause served to protect plaintiff's claim from the express preemption clause. It stated:
We reject this reading of the savings clause because it would subvert the federal Act's statutory scheme. General savings clauses cannot be read to permit common-law actions that contradict and subvert a statutory scheme.
Id. at 869. For the latter proposition, Boyle cited Morales v. Trans World Airlines, Inc., 504 U.S. ___, ___ 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992), which stated (23 days before Cipollone) that a general "remedies" savings clause could not be permitted to supersede a specific substantive preemption provision. Morales drew support from International Paper Co. v. Ouellette, 479 U.S. 481, 494, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987), where the Court stated, "[W]e do not believe Congress intended to undermine this carefully drawn statute through a general saving clause."
Boyle alternatively found implied preemption on the basis of conflicts between state law claims and Congress's statutory objectives and the means Congress chose to accomplish its intent. Id. at 870. As to Cipollone's discouragement of implied preemption analysis where Congress has addressed the subject, Boyle held *34 that there was no reliable indicium of congressional intent in the conflicting clauses of the 1966 Safety Act.
We are persuaded by Gill's and Boyle's express preemption analysis. We are not bound by U.S. court of appeals rulings on the preemptive effect of a federal statute, but we accord due respect to such decisions, particularly when they are in agreement. Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990). Here, with one exception, the courts of appeals agree only on the proper result where state damage claims challenge a manufacturer's choice of a restraint system that complies with FMVSS 208. The exception is Myrick, where the Eleventh Circuit felt bound both by Taylor's holding against express preemption and by Cipollone's holding against implied preemption where Congress has spoken.
We are not in the box that confined the Eleventh Circuit. We emphasize the centrality of Congress's intent to insulate auto makers from state safety standards not identical to federal standards, and we recognize the incompatibility of permitting juries across the country to reject the federally approved choices on the say-so of a single expert witness who disagrees with them. The resulting conflict is so destructive of federal goals that almost every court finds preemption in one way or another. Before Cipollone, the easy route was to reject express preemption in the face of the conflicting statutory clauses and to imply preemption from the context. Then, Cipollone seemed, at least to the Eleventh Circuit, to invalidate that solution.
We reject the view that the Safety Act does not explicitly preempt state damage claims targeting federally-approved choices of restraint systems. The Supreme Court's opinions in Cipollone, de la Cuesta, Alessi, Kalo Brick & Tile, and Garmon[4] demonstrate that state law damage liabilities have long been recognized as a potent form of state regulation. Few doubts remain that *35 permitting state law damage claims creates an actual conflict with the purposes of the Safety Act and FMVSS 208. The Supreme Court's opinions in Morales and Ouellette[5] state that a general saving clause cannot be read to permit common-law actions that contradict and subvert a statutory scheme.
It demeans Congress to conclude either that it did not appreciate the consequences of permitting state liability claims, or that Congress purposely wrote the savings clause to tear down the barrier against inconsistent state regulation that the preemption clause was written to erect. For that reason, we conclude that the actual-conflict analysis, used by the circuit courts to support a conclusion of implied preemption, provides a sound basis for holding that Congress expressly preempted these state law liabilities. In our view, Congress wrote the savings clause to preserve only the right to sue for product defects not involving the same aspects of performance as addressed by an FMVSS. Admittedly, adopting such a reading renders the savings clause partially redundant. However, that is a lesser offense than adopting a reading that renders the clause contrary to a principal purpose of Congress.
As we earlier indicated, the motion to file a third-party complaint in the first case should not have been denied on preemption grounds. It follows that the motion to dismiss in the second case should not have been granted on the ground of issue preclusion. However, appeals are from judgments, and not from reasons. Since we have held the bus defendants' claims to be preempted by federal law, we affirm in both cases.
NOTES
[1] Compare Perry v. Mercedes Benz of No. America, Inc., 957 F.2d 1257 (5th Cir.1992) (Airbag did not inflate on frontal impact. Plaintiff alleged it was defective because it was set to inflate only at an excessively high impact velocity, a matter not covered by FMVSS 208. Held: no preemption.)
[2] The savings clause was formerly codified as 15 U.S.C.A. § 1397(c) (West 1982).
[3] The true answer may be the one suggested by Professor Wellington in another context:

For I am impressed that a [statute] is the product of negotiation (as indeed most written law is), that negotiation of complex issues usually leaves major problems unresolved, and that language on which people of divergent views can agree must often be open-textured  to say the least. Let's understand one thing; purposeful ambiguity is to legislative drafting what the fastball is to major league baseball.
Harry H. Wellington, Interpreting The Constitution; The Supreme Court And The Process Of Adjudication, 55-56 (1990).
[4] Cited supra, slip pages 9 and 11.
[5] Cited supra, slip page 17.