839 A.2d 120 (2004)
365 N.J. Super. 356
STATE of New Jersey, Plaintiff-Appellant,
v.
Michael D. WAHL, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 17, 2003.
Decided January 14, 2004.
*122 John G. Laky, Warren County Prosecutor, attorney for appellant (Frank Bucsi, First Assistant Prosecutor and Kelly Anne S. Shelton, Assistant Prosecutor, of counsel and on the brief).
Michael D. Wahl, respondent, pro se.
Before Judges NEWMAN, FALL and PARRILLO.
*121 The opinion of the court was delivered by FALL, J.A.D.
In this domestic violence weapons forfeiture matter, the State of New Jersey appeals from an order entered in the Family Part on June 19, 2003, ordering that weapons seized from defendant, Michael D. Wahl, pursuant to the applicable provisions of the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, be returned to defendant. The primary issue in this appeal is whether a New Jersey court may order the return of seized firearms to a person who has been convicted of a "misdemeanor crime of domestic violence," as defined by the federal Gun Control Act of 1968, 18 U.S.C.A. §§ 921-930. In considering that issue, we must also determine whether the defendant was convicted of a misdemeanor crime of domestic violence and, if so, whether the weapons return and forfeiture provisions contained in N.J.S.A. 2C:25-21d(3) are preempted by 18 U.S.C.A. § 922(g)(9), enacted by Congress in 1996 and more commonly known as the Lautenberg Amendment to the Gun Control Act, which prohibits possession of a firearm that "has been shipped or transported in interstate or foreign commerce" by one so convicted.
In reversing, we conclude that a person convicted of the disorderly persons offense of simple assault, contrary to N.J.S.A. 2C:12-1(a)(1), has been convicted of a "misdemeanor crime of domestic violence" when the assault involved the use or attempted use of physical force against that person's current or former spouse or domestic partner, and is thereby prohibited by 18 U.S.C.A. § 922(g)(9) from owning or possessing any firearms that have, at any point, been shipped or transported in interstate or foreign commerce. Reading N.J.S.A. 2C:25-21d(3) and 18 U.S.C.A. § 922(g)(9) in pari materia, we further conclude that a person convicted of a misdemeanor crime of domestic violence is "unfit," under New Jersey law, from using, possessing, or owning any firearms that have been shipped or transported in interstate or foreign commerce. Therefore, the weapons forfeiture and return provisions contained in N.J.S.A. 2C:25-21(g)(9) and 18 U.S.C.A. § 922(g)(9) are in harmony and the doctrine of federal preemption is inapplicable to these circumstances.
The following factual and procedural history is relevant to our analysis of the issues presented. Defendant and Georgia J. Cinq-Mars[1] were married on December 19, 1999. No children were born of their marriage. On December 10, 2000, an incident occurred between defendant and Cinq-Mars that resulted in two actionsone criminal and one civil.
On December 10, 2000, Cinq-Mars filed a complaint against defendant under the *123 PDVA in Hackettstown Municipal Courtdocketed later in the Family Part as FV-21-269-01alleging that defendant had committed acts of domestic violence against her consisting of assault and criminal mischief. In her complaint, Cinq-Mars stated that she had been physically assaulted by defendant, in that he had choked and slapped her and dragged her down a flight of stairs. Cinq-Mars also alleged a history of acts of domestic violence perpetrated by defendant against her in June or July 1999, causing her to leave their residence and stay in a shelter for protection. In her domestic violence complaint, Cinq-Mars also stated that defendant possessed numerous rifles, shotguns, and bows and arrows. The municipal court judge issued a temporary restraining order (TRO) against defendant on December 10, 2000, and scheduled a final hearing in the Family Part for December 14, 2000.
Pursuant to N.J.S.A. 2C:25-21a or -22b,[2] based upon probable cause to believe an act of domestic violence had occurred, Sergeant Scott Wheeler of the Hackettstown Police Department signed a criminal complaint against defendant, charging him with aggravated assault, contrary to N.J.S.A. 2C:12-1b(1), alleging that defendant had committed acts of aggravated assault against Cinq-Mars by attempting to cause bodily injury to her by choking and slapping her. Pursuant to the authority contained in N.J.S.A. 2C:25-21d(1)(b), as well as the provision in the TRO prohibiting defendant from possessing any firearms or other weapons, the police seized all weapons in defendant's possession. Numerous firearms, rounds of ammunition, and bows were seized from defendant and delivered by the police to the Warren County Prosecutor pursuant to N.J.S.A. 2C:25-21d(2). Additionally, the police seized defendant's firearms purchaser identification card.
The PDVA prescribes the procedure to be followed upon the seizure of weapons, as follows:
Weapons seized in accordance with the above shall be returned to the owner except upon order of the Superior Court. The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within 45 days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.

A hearing shall be held and a record made thereof within 15 days of the notice provided above. No formal pleading and no filing fee shall be required as a preliminary to such hearing. The hearing shall be summary in nature. Appeals from the results of the hearing *124 shall be to the Superior Court, Appellate Division, in accordance with the law.
If the prosecutor does not institute an action within 45 days of seizure, the seized weapons shall be returned to the owner.
After the hearing the court shall order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner if the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.

Nothing in this act shall impair the right of the State to retain evidence pending a criminal prosecution. Nor shall any provision of this act be construed to limit the authority of the State or a law enforcement officer to seize, retain or forfeit property pursuant to chapter 64 of Title 2C of the New Jersey Statutes.
If, after the hearing, the court determines that the weapons are not to be returned to the owner, the court may:
(a) With respect to weapons other than firearms, order the prosecutor to dispose of the weapons if the owner does not arrange for the transfer or sale of the weapons to an appropriate person within 60 days; or
(b) Order the revocation of the owner's firearms purchaser identification card or any permit, license or authorization, in which case the court shall order the owner to surrender any firearm seized and all other firearms possessed to the prosecutor and shall order the prosecutor to dispose of the firearms if the owner does not arrange for the sale of the firearms to a registered dealer of the firearms within 60 days; or
(c) Order such other relief as it may deem appropriate. When the court orders the weapons forfeited to the State or the prosecutor is required to dispose of the weapons, the prosecutor shall dispose of the property as provided in N.J.S. 2C:64-6.
[N.J.S.A. 2C:25-21d(3)(emphasis added).]
Thus, where the Family Part concludes "that the domestic violence situation no longer exists[,]" that the owner is not "unfit[,]" and that the owner does not pose "a threat to the public in general or a person or persons in particular[,]" the court shall order that the seized weapons be returned to the owner. See Matter of J.W.D., 149 N.J. 108, 115-16, 693 A.2d 92 (1997); State v. Volpini, 291 N.J.Super. 401, 412-15, 677 A.2d 780 (App.Div.1996).
On December 14, 2000, a final hearing in FV-21-269-01 was conducted in the Family Part, resulting in entry of a final restraining order (FRO) against defendant. Notably, defendant was prohibited from possessing any firearms or weapons.
On December 21, 2000, the Warren County Prosecutor filed a petition in the Family Part seeking an order regarding disposition of the seized weapons, ammunition, and firearms purchaser identification card. That petition was docketed as FO-21-118-01.
On January 10, 2001, the Warren County Prosecutor's Office downgraded the aggravated assault charge against defendant to simple assault, contrary to N.J.S.A. 2C:12-1(a)(1), and remanded the matter to the Hackettstown Municipal Court. Defendant entered a plea of not guilty to the downgraded charge. On March 14, 2001, after a trial in municipal court, defendant *125 was convicted of the disorderly persons offense of simple assault.[3]
On January 18, 2001, Cinq-Mars appeared in the Family Part and petitioned for dismissal of the domestic violence complaint filed under FV-21-269-01 and the FRO entered thereunder. The Family Part entered an order of dismissal in accordance with her request.
A hearing was held in the Family Part on March 29, 2001, pertaining to the prosecutor's weapons disposition petition in FO-21-118-01. Defendant was represented by counsel. The parties entered into an agreement placed upon the record, under which the weapons would not be returned to defendant for a period of one year, during which defendant was to undergo counseling. A formal order memorializing that agreement was entered on April 16, 2001, which specifically required that defendant obtain an evaluation from a psychiatrist or psychologist addressing the issue of whether defendant posed a danger to himself or others. An order amending the April 16, 2001 order clarified that defendant was not to possess any weapons for a period of one year and that a determination as to defendant's fitness to possess personal weapons shall be made at the end of the one-year period.
On September 5, 2002, a review hearing was conducted in the Family Part on the issue of whether defendant's weapons should be returned. The court received into evidence a report from Dr. Lawrence H. Lentchner, a psychologist, dated August 13, 2002. In his report, Dr. Lentchner stated that defendant had been a patient of his during the past one and one-half years, having seen defendant for a total of seventeen sessions both individually and with Cinq-Mars. Dr. Lentchner stated defendant did not have an anger management problem and saw no reason why defendant's firearms should not be returned to him.
During the hearing, the court took testimony from Cinq-Mars. At that time the parties had been separated for almost two years. Cinq-Mars testified that she had no objection to the firearms and weapons being returned to defendant. However, Cinq-Mars expressed concern that defendant's possession of weapons might endanger defendant's adult son because that child had attempted suicide earlier in 2002.
Upon questioning by the prosecutor, Cinq-Mars described several incidents of violent behavior by defendant toward her prior to the December 10, 2000 incident. Cinq-Mars also stated that defendant had related an incident to her that had occurred when defendant's oldest child was age fifteen and defendant was still married to his first wife. Cinq-Mars stated defendant had told her that he had given the key to his gun rack to his fifteen year-old son because defendant "was afraid of what he might do because his wife had moved in with her boyfriend." Cinq-Mars also related an altercation between her and defendant that had occurred after she had received a subpoena to appear at the September 5, 2002 hearing. Cinq-Mars testified that during an argument while she was riding with defendant in his vehicle, defendant refused to allow her to leave the car while "[h]e was running through red lights and stop signs, so that [she] couldn't jump out[.]" Cinq-Mars explained that defendant then apologized, turned the vehicle around, and took her home.
Cinq-Mars testified she did not object to the return of the weapons because the weapons had never played a part in their arguments and he had never threatened *126 use of the weapons against her. Defendant testified and denied the incidents testified to by Cinq-Mars.
After considering the testimony of the parties and other evidence, the judge addressed the defendant as follows:
I find your wife to be very credible. I sat here, and I looked at her face as she spoke, and it's very obvious to me that she has some very strong feelings for you. And I find that, after she got the subpoena, that you did have this drive with her.... [F]rankly, I feel you kind of lost it with her and I'm really concerned.
Here you have a woman that's very much concerned about you, and she's telling you. You're going to counseling. You're trying to put your marriage back together and she's telling you she doesn't want to have any part of those guns. Those guns terrify her.
* * * * * *
I find that you had the training that you said you did in ROTC, and there's no question that you can safely handle guns. I don't question that. But I have to tell you something, I didn't like that outburst where you lost control with her on that incident[.] ... And it seems to me you've been counseling for anger management and you had a setback when that occurred, and I'm not inclined to just give your guns back to you. I don't want you getting these guns and having another anger management problem. That's my primary reason.
My secondary reason is you have a son, who I'm told attempted to commit suicide. And it doesn't seem like a good idea ... to be putting these guns back into this home when you have a son who just attempted suicide.
* * * * * *
But in any event, I'm not satisfied that you don't present a threat and, therefore, what I'm going to do is I'm going to order that this case be reviewed again, in six months. And I'm going to tell you, I want you to continue back with that doctor for that anger management[.]...
On September 20, 2002, the court entered an order memorializing its decision, directing that the weapons be retained by the prosecutor; that defendant continue in counseling and supply a report from the counselor to the prosecutor's office addressing the issue of whether defendant poses a risk to himself or others or property if the weapons were returned to him; and that the matter be re-listed for review in six months.
On May 8, 2003, a review hearing on the weapons-return issue was conducted in the Family Part. Defendant submitted an updated report from Dr. Lentchner dated January 14, 2003, stating that defendant had continued to see him for psychotherapy, that "[h]e is well motivated for treatment, and makes considerable progress[,]" that he saw no reason for "limitation on him with regard to his possession of firearms[,]" and that defendant "is not an individual at risk of either harm to himself or others." Nevertheless, the State objected to the return of the weapons on the basis that defendant posed a danger "to the public in general or a person or persons in particular," and that he was disqualified from possession of a firearm pursuant to 18 U.S.C.A. § 922(g)(9). The prosecutor and judge then engaged in the following colloquy:
[PROSECUTOR]: Your Honor, back in 2000, the defendant was charged with simple assault for slapping and allegedly choking his then wife, Georgiana Cinq-Mars. He has been convicted of that offense, simple assault. Simple assault *127 is a disorderly persons offense. Under federal law, 18 U.S.C. 922, subsection "g" ... it shall be unlawful for any purpose for any person who has been convicted in any court of a misdemeanor crime of domestic violence to ship or transport in interstate or foreign
THE COURT: It's not a misdemeanor, counsel.
[PROSECUTOR]: Your Honor
THE COURT: It's a disorderly persons, isn't it?
[PROSECUTOR]: Based on a letter issued by the former Attorney General Peter Verniero on April 4th, 1997, misdemeanor crimes of domestic violence include petty disorderly and disorderly offenses as defined by New Jersey. As the court is aware, [when] New Jersey... switched from 2A to 2C for the criminal code [it] did away with misdemeanor offenses.
The standard hallmark under common law is that a misdemeanor offense is an offense which imposes no more than one year in jail as a sentence. Petty disorderly persons offense or simple assault carries no more than a six month sentence. While we understand, Your Honor, that the Attorney General's memorandum is not binding on the court, we ask the court to take judicial notice of it. It has been interpreted as such.
Basically, there needs to be a finding of five separate facts. There needs to be a relationship with the victim. That relationship must either be a spouse or having a child in common. The victim in this case was the defendant's former wife or estranged wife at this point in time. There needs to be a showing of an element of violence, the use or attempted use of physical force.
At that point, the judge interrupted the prosecutor to inquire whether Cinq-Mars was present to give further testimony. The State had subpoenaed Cinq-Mars, and the prosecutor informed the judge that she was present, whereupon her testimony was taken. Cinq-Mars stated she had no contact with defendant since the September 5, 2002 hearing, but complained that he continued to telephone her on a daily basis, stopping only after she received the subpoena for the May 8th hearing. In a colloquy with the judge, Cinq-Mars stated she had not filed another domestic violence complaint against defendant because she did not feel threatened by him. The judge informed Cinq-Mars that "[i]f the phone calls are annoying, that would be grounds to get a TRO[,]" and he would recommend that she "talk about getting a temporary restraining order, because if he continues to call you and you don't want to talk to him, you don't have to be threatened, okay, if you're going to be harmed. Being annoyed is sufficient." Cinq-Mars stated she would like to seek a restraining order, and the judge adjourned the proceedings for three weeks to give her an opportunity to file a domestic violence complaint and apply for a TRO.
On that same dateMay 8, 2003Cinq-Mars filed a second domestic violence complaint against defendant, docketed as FV-21-508-03, alleging acts of harassment consisting of defendant telephoning her three times on April 24, 2003, and telephoning her approximately once per day over the last year. A TRO was issued and the matter scheduled for a final hearing on May 15, 2003. That hearing was adjourned to May 22, 2003. On May 22, 2003, Cinq-Mars appeared in the Family Part and requested that the domestic violence complaint be dismissed, and the court entered an order dissolving the TRO and dismissing the complaint. A transcript of the May 22, 2003 hearing is not contained in the record on appeal.
*128 The weapons forfeiture review hearing was continued on May 29, 2003. Acknowledging that the domestic violence complaint that had been filed against defendant under FV-21-508-03 had been dismissed, the prosecutor contended that defendant still posed a danger to himself, to Cinq-Mars and to the community, and that the weapons should be forfeited. In ordering that the weapons be returned to defendant, the judge found that although Cinq-Mars had been annoyed by the continuing telephone calls from defendant, she had clearly stated that she did not feel threatened by defendant nor did she object to the return of his weapons.
In requesting a stay of the judge's order, the prosecutor renewed his previous argument that 18 U.S.C.A. § 922(g)(9) prohibited defendant from possessing weapons. The court denied the application for a stay. On June 19, 2003, the trial court entered two orders. One memorialized the court's decision ordering return of the weapons to defendant. The second order reconsidered the State's request and granted a stay of the return order subject to a notice of appeal being filed in this court within twenty days. On July 9, 2003, the State filed a notice of appeal in this court from the June 19, 2003 order directing the return of defendant's weapons.
On appeal, the State presents the following arguments for our consideration:
POINT I
18 U.S.C. SECTION 922(g)(9) PREEMPTS STATE LAW.
POINT II
THE TRIAL COURT IGNORED CREDIBLE AND RELIABLE EVIDENCE WHEN IT RULED THE DEFENDANT WAS NOT A DANGER TO THE PUBLIC IN GENERAL OR A PERSON IN PARTICULAR.

I.
We first address the second argument advanced by the State, that the trial court erred in concluding that defendant's possession of weapons posed no danger "to the public in general or a person or persons in particular." N.J.S.A. 2C:25-21d(3). After analyzing the record in the light of the arguments presented by the parties in their briefs, we conclude that this finding by the trial court is supported by adequate, substantial, credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998).

II.
In its first argument, the State contends that 18 U.S.C.A. § 922(g)(9) preempts the weapons-return provisions contained in N.J.S.A. 2C:25-21d(3), and precludes the return of the weapons to defendant. The federal statute provides, as follows:
(g) It shall be unlawful for any person
* * * * * *
(9) who has been convicted in any court of a misdemeanor crime of domestic violence,
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
[18 U.S.C.A. § 922(g)(9).]
A "misdemeanor crime of domestic violence" is defined to mean an offense that

*129 (i) is a misdemeanor under Federal or State law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.
[18 U.S.C.A. § 921(a)(33)(A).]
However, a person shall not be considered to have been convicted of a "misdemeanor crime of domestic violence" unless the person was represented by counsel in the case or knowingly and intelligently waived the right to counsel. 18 U.S.C.A. § 921(a)(33)(B)(i)(I). There is nothing in the record on appeal to suggest that this provision had not been satisfied. Additionally, if the conviction has been expunged or set aside, a person shall not be considered to have been convicted of such an offense. 18 U.S.C.A. § 921(a)(33)(B)(ii).
Thus, for the firearms-possession prohibitions contained in 18 U.S.C.A. § 922(g)(9) to be applicable here, (1) the defendant must have been convicted of a "misdemeanor crime of domestic violence" that involved the use of physical force against his spouse, and (2) the seized firearms must have been shipped or transported in interstate or foreign commerce.
Both 18 U.S.C.A § 922(g)(9) and 18 U.S.C.A. § 921(a)(33) were enacted by Congress in September 1996 by the Lautenberg Amendment to the federal Gun Control Act of 1968. Pub.L. 104-208, § 101(f) (1996). Congress intended this amendment "to protect victims of domestic violence from further harm by removing guns from the hands of individuals who have demonstrated a propensity toward violence against an intimate partner." Ashley G. Pressler, Note, "Guns and Intimate Violence: A Constitutional Analysis of the Lautenberg Amendment," 13 St. John's J. Legal Comment. 705 (1999) (citing to the legislative history of the Amendment).
The covering of misdemeanants as a prohibited-possession class in the Gun Control Act by the Lautenberg Amendment was deemed necessary because "[i]n most states, domestic violence is considered largely a misdemeanor offense, although the injuries to all battered women are at least as serious as those incurred in 90% of all violent crimes classified as felonies." Alison J. Nathan, Note, "At the Intersection of Domestic Violence and Guns: The Public Interest Exception and the Lautenberg Amendment," 85 Cornell L.Rev. 822, 825 n. 23 (2000). One commentator explained the rationale for enactment of the Lautenberg Amendment, as follows:
Originally, the "GCA [Gun Control Act of 1968] disqualified certain categories of people from receiving firearms or ammunition that had traveled in interstate commerce and imposed criminal liability for the sale or transfer of firearms to disqualified people." As a result, the GCA allowed states to enforce their own laws regarding firearms, although permitting federal monitoring of any interstate activity involving firearms. As time passed, however, the inadequacy of the original language contained in the GCA became evident, particularly in regard to domestic violence. In addition, the increase in gun-related domestic violence incidents suggested that Congress needed to supplement the GCA. In response to these incidents, Congress enacted the Lautenberg *130 Amendment in 1996 to halt the growing number of domestic violence deaths.
The Lautenberg Amendment expands the list of persons subject to a firearm prohibition; the Amendment also makes the receipt or possession of a firearm that has moved in interstate commerce a felony if the person possessing the weapon was previously convicted of a misdemeanor crime of domestic violence.... The Amendment applies to all persons convicted of misdemeanor crimes of domestic violence, regardless of the date of the offense. Moreover, any violence, whether actual, attempted, or threatened, against a spouse or childand prosecuted successfully as a misdemeanortriggers application of the Amendment and prohibits the domestic violence offender from possessing, transferring, and purchasing firearms or ammunition. A person who is subject to the Amendment and fails to relinquish all firearms and ammunition can be fined up to $250,000 and receive a ten-year prison sentence.
[Polly McCann Pruneda, Comment, "The Lautenberg Amendment: Congress Hit The Mark By Banning Firearms From Domestic Violence Offenders," 30 St. Mary's L.J. 801, 839-40 (1999) (quoting Major Einwechter and Captain Christiansen, "Abuse Your Spouse and Lose Your Job: Federal Law Now Prohibits Some Soldiers from Possessing Military Weapons," 1997 Army Law., at 25-26 (Aug.1997); other footnotes omitted).]
In United States v. Kavoukian, 315 F.3d 139, 144 (2d Cir.2002), the court noted that the intent of Congress in enacting the Lautenberg Amendment was to prohibit anyone who has been convicted of an offense involving the use or attempted use of force against, among others, his or her spouse, from possessing a firearm that has been shipped or transported in interstate or foreign commerce.
In discussing the issue of preemption of a state statute by federal law, we recently explained:
Under the Supremacy Clause of the United States Constitution U.S. Const., art. VI, cl. 2, the laws of the United States "shall be the supreme law of the land." As such, state laws that "`interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L. Ed.2d 532, 542 (1991) (quoting Gibbons v. Ogden, 22 U.S. 1, 211, 6 L.Ed. 23, 73-74, 9 Wheat 1 (1824)); see Vail v. Pan Am Corp., 260 N.J.Super. 292, 297, 616 A.2d 523 (App.Div.1992). The primary "focus of analysis is on the intent of Congress." Miranda v. Fridman, 276 N.J.Super. 20, 25, 647 A.2d 167 (App. Div.), certif. denied, 138 N.J. 271, 649 A.2d 1291 (1994). Federal preemption may be express, ... or implied where Congress suggests an intent to occupy an entire field to the exclusion of state legislation.... Even when it is clear Congress has not fully occupied a field, state law will still be preempted if it is in actual conflict with federal law.... Thus, state law must yield to federal law where "`compliance with both federal and state regulations is a physical impossibility,' or where state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L. Ed.2d 73, 84 (1992) (quoting Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300, 108 S.Ct. 1145, 1150-51, 99 L. Ed.2d 316, 325 (1988)); see R.F. v. Abbott Lab., 162 N.J. 596, 618, 745 A.2d *131 1174 (2000); Miranda, supra, 276 N.J.Super. at 26, 647 A.2d 167. In determining whether such a conflict exists, this court must analyze "`the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.'" R.F., supra, 162 N.J. at 618, 745 A.2d 1174 (quoting Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L. Ed.2d 604, 614 (1977)).
However, there is a "longstanding presumption that `Congress did not intend to displace state law.'" Gurrieri v. William Zinsser & Co., 321 N.J.Super. 229, 233, 728 A.2d 832 (App.Div. 1999) (quoting Sherman v. Citibank (S.D.) N.A., 143 N.J. 35, 45, [668 A.2d 1036] (1995))[.] ... Moreover, courts are cautioned to exercise restraint in applying preemption to "spheres traditionally occupied by the states." Gurrieri, supra, 321 N.J.Super. at 233, 728 A.2d 832. A "federal-state balance" should be maintained especially when a state statute involving public safety is challenged because there is a well-established presumption "that the historic police powers of the States were not to be superseded by the [federal law] unless there [is] the clear and manifest purpose of Congress." Sherman, supra, 143 N.J. at 45-46, 668 A.2d 1036; see Gurrieri, supra, 321 N.J.Super. at 233, 728 A.2d 832. Further, in the absence of persuasive reasonswhere either Congress explicitly mandates a preemption or where no other conclusion can be drawn from the nature of the regulated subject matterfederal preemption of state law is simply not favored. Gurrieri, supra, 321 N.J.Super. at 233-34, 728 A.2d 832 (citation omitted).
[State v. Rackis, 333 N.J.Super. 332, 339-41, 755 A.2d 649 (App.Div.2000) (other citations omitted.]
Significantly, the federal Gun Control Act of 1968, which "governs all aspects of firearm control including unlawful acts, licensing, penalties, exceptions, relief from disabilities, and rules and regulations[,]" also "explicitly disavowed any intent to occupy the field of gun control to the exclusion of state police powers[,]" Rackis, supra, 333 N.J.Super. at 344, 755 A.2d 649, by enacting the following section:
No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

[18 U.S.C.A. § 927 (emphasis added).]
We must first address the predicate question of whether defendant's conviction for the disorderly persons offense of simple assault, contrary to N.J.S.A. 2C:12-1(a)(1), constitutes a "misdemeanor crime of domestic violence" as defined by 18 U.S.C.A. § 921(a)(33)(A), and as used in 18 U.S.C.A. § 922(g)(9). Certainly, defendant was convicted of an offense that has, as an element, the use of force against his spouse and was, thus, "domestic violence" in nature; it was the same incident that formed the basis for Cinq-Mars obtaining a domestic violence restraining order under the PDVA.
The specific issue is whether such an assault "is a misdemeanor under Federal or State law[.]" 18 U.S.C.A. § 921(a)(33)(A)(i). 27 C.F.R. § 478.11 defines a "misdemeanor crime of domestic violence," in pertinent part, as follows:
(1) Is a misdemeanor under Federal or State law or, in States which do not classify offenses as misdemeanors, is an offense punishable by imprisonment for *132 a term of one year or less, and includes offenses that are punishable only by a fine. (This is true whether or not the State statute specifically defines the offense as a "misdemeanor" or as a "misdemeanor crime of domestic violence."... );
(2) Has, as an element, the use or attempted use of physical force (e.g. assault and battery), or the threatened use of a deadly weapon; and
(3) Was committed by a current or former spouse, ....
[Emphasis added.]
New Jersey does not classify offenses under Title 2C as "misdemeanors." A violation of N.J.S.A. 2C:12-1(a)(1), simple assault, is classified as a disorderly persons offense, punishable by a term of imprisonment that "shall not exceed 6 months[,]" N.J.S.A. 2C:43-8, and a fine not to exceed $1,000, N.J.S.A. 2C:43-3c.
We conclude that the term "misdemeanor crime of domestic violence," as defined in 18 U.S.C.A. § 921(a)(33)(A) and 27 C.F.R. § 478.11, must be construedparticularly in light of the Congressional intent in enactment of the Lautenberg Amendmentto include offenses that New Jersey law classifies as disorderly persons offenses, assuming the presence of the predicate elements. Thus, since defendant was convicted of a misdemeanor crime of domestic violence, perpetrated by the use of physical force against his spouse, the weapons-possession prohibition contained in 18 U.S.C.A. § 922(g)(9) applies to defendant.
This conclusion is consistent with the result reached by other courts. White v. Department of Justice, 328 F.3d 1361, 1362-63 (D.C.Cir.2003) (holding that a misdemeanor simple assault under the Virginia Code constituted a "misdemeanor crime of domestic violence" prohibiting the petitioner from his position as a federal corrections officer by application of 18 U.S.C.A. § 922(g)(9)); United States v. Meade, 175 F.3d 215, 218 (1st Cir.1999) (holding that assault by appellant of his spouse in Massachusetts constituted "misdemeanor crime of domestic violence"); United States v. Smith, 171 F.3d 617, 620-21 (8th Cir.1999) (holding that simple misdemeanor assault conviction against appellant for assaulting the mother of his child qualified as a "misdemeanor crime of domestic violence"); Gillespie v. City of Indianapolis, 185 F.3d 693, 708 (7th Cir. 1999) (recognizing that 18 U.S.C.A. § 922(g)(9) preempts state law on issue of whether a person convicted of a "misdemeanor crime of domestic violence" may possess a weapon), cert. denied, 528 U.S. 1116, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000); United States v. Finnell, 256 F.Supp.2d 493, 495-97 (E.D.Va.2003) (holding that two prior assault convictions against defendant, committed against members of his family, qualified as misdemeanor crimes of domestic violence, warranting his conviction for possession of a weapon contrary to 18 U.S.C.A. § 922(g)(9)); National Ass'n of Gov't Employees v. Barrett, 968 F.Supp. 1564, 1573 (N.D.Ga.1997) (noting that "[w]ithout doubt, Congress has selectively classified domestic violence misdemeanants as a group of individuals who should be restricted in their access to firearms"), aff'd, 155 F.3d 1276 (11th Cir.1998); Pennsylvania State Police v. McPherson, 831 A.2d 800, 805-06 (Pa. Cmwlth.2003) (ruling that prior conviction for disorderly conduct was sufficient to subject gun-permit applicant to federal gun disability contained in 18 U.S.C.A. § 922(g)(9)).
Our conclusion is also consistent with the stated purposes of the Lautenberg Amendment and the parallel intent of the New Jersey PDVA to provide victims of domestic violence the maximum protection from abuse and harm that the law can *133 provide. N.J.S.A. 2C:25-18; Cesare v. Cesare, supra, 154 N.J. at 399-400, 713 A.2d 390; Matter of J.W.D., supra, 149 N.J. at 114, 693 A.2d 92. We further note that the New Jersey Attorney General, in a memorandum to all law enforcement agencies dated April 4, 1997, reached the same conclusion, and required that all county and local law enforcement agencies apply the prohibitions contained in 18 U.S.C.A. § 922(g)(9) to every officer and employee in their respective agencies required or authorized to carry a firearm. As noted by the Attorney General, the Lautenberg Amendment does not provide a "public interest" exception for law enforcement personnel or other government officials who need to possess a firearm in connection with the performance of their job.
Here, utilizing the criteria outlined in N.J.S.A. 2C:25-21d(3), the Family Part judge found that "the domestic violence situation no longer exist[ed,]" and that defendant no longer posed "a threat to the public in general or a person or persons in particular." N.J.S.A. 2C:25-21d(3). Ostensibly, we must determine whether "there is a direct and positive conflict between such provision[, 18 U.S.C.A. § 922(G)(9),] and the law of [this] State so that the two cannot be reconciled or consistently stand together[,]" 18 U.S.C.A. § 927.
Although the focus of the Family Part judge was whether defendant "poses a threat to the public or to a person or persons in particular[,]" and whether "the domestic violence situation no longer exists[,]" N.J.S.A. 2C:25-21d(3) permits the prosecutor to petition the Family Part
to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit [.] ...
[Emphasis added.]
18 U.S.C.A. § 922(g)(9) is a law governing the use, possession or ownership of firearms and is thereby incorporated within the emphasized language contained in N.J.S.A. 2C:25-21d(3). Pursuant to that federal law, a person convicted of a misdemeanor crime of domestic violence is "unfit" to use, possess, or own firearms that have "been shipped or transported in interstate or foreign commerce." Reading N.J.S.A. 2C:25-21d(3) and 18 U.S.C.A. § 922(g)(9) in pari materia, we conclude they can be reconciled and consistently stand together. Specifically, the Lautenberg Amendment, a law governing the use, possession and ownership of firearms, precludes use, possession or ownership of firearms that have been shipped or transported in interstate or foreign commerce by a person who has been convicted of a misdemeanor crime of domestic violence. That prohibition is covered by the prohibitions contained in N.J.S.A. 2C:25-21d(3). Therefore, we need not reach the issue of preemption. See State v. S.A., 290 N.J.Super. 240, 249, 675 A.2d 678 (App.Div.1996) (concluding that 18 U.S.C.A. § 922(g)(8), prohibiting weapon possession by a person against whom a domestic violence restraining order had been issued, was in harmony and not in conflict with N.J.S.A. 2C:25-21d(3) that prohibits return of weapons where "the court finds `that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular,' ... unless "the domestic violence situation no longer exists").
Here, the Family Part judge rejected the application of 18 U.S.C.A. § 922(g)(9) because the simple assault conviction was a disorderly persons offense and he did not *134 consider it to constitute a "misdemeanor crime of domestic violence." We have ruled otherwise, and conclude that the statutory predicates of "the use or attempted use of physical force" and the requisite domestic relationship, are also present. Whether the remaining predicate for application of 18 U.S.C.A. § 922(g)(9) was presentthat the seized firearms had ever "been shipped or transported in interstate or foreign commerce[,]"is an issue that was not reached by the Family Part judge, nor is the record on appeal adequate for us to decide the question. Accordingly, we reverse that part of the June 19, 2003 order that pertains to firearms and remand the matter for a hearing as to whether the seized firearms or any of their component parts have ever been shipped or transported in interstate or foreign commerce.
We provide the following guidance for the remand proceedings. First, since the State has sought forfeiture, it bears the burden to establish the predicate elements for application of the firearms prohibitions contained in 18 U.S.C.A. § 922(g)(9), including the element that the seized weapons, at some point had "been shipped or transported in interstate or foreign commerce."
We also note that the market in firearms is heavily interstate in nature, even international in character, and it would be indeed rare that a firearm, or at least some of its component parts, would have never moved across state lines. People v. Adams, 193 Misc.2d 78, 747 N.Y.S.2d 909, 913-14 (N.Y.Sup.Ct.2002). Indeed, no more is required than a minimal nexus that the firearm had been, at some point, in interstate commerce. Scarborough v. United States, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L. Ed.2d 582, 591 (1977); United States v. Gaines, 295 F.3d 293, 302 (2d Cir.2002); United States v. Carter, 270 F.3d 731, 735 (8th Cir.2001); United States v. Scott, 263 F.3d 1270, 1274 (11th Cir.2001), cert. denied, 534 U.S. 1166, 122 S.Ct. 1182, 152 L. Ed.2d 124 (2002); Gillespie, supra, 185 F.3d at 705.

III.
In conclusion, we affirm that portion of the June 19, 2003 order that directs that all non-firearm weapons seized from defendant be returned to him. We reverse that portion of the June 19, 2003 order directing that the seized firearms be returned to defendant and remand the matter to the Family Part for a hearingat which the State bears the burden of proofto determine whether the firearms, or any of their component parts have ever been shipped or transported in interstate or foreign commerce. If so, an order of forfeiture shall be entered in accordance with the options set forth in N.J.S.A. 2C:25-21d(3)(a)-(c).
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] In the various court actions relevant to this appeal, Georgia J. Cinq-Mars is also referred to as "Georgia J. Wahl" and "Georgianna J. Wahl." In this opinion, we will refer to her as "Cinq-Mars."
[2] N.J.S.A. 2C:25-21a(1) "requires" an investigating police officer to arrest and file a criminal complaint against a perpetrator where the victim exhibits signs of injury caused by an act of domestic violence. N.J.S.A. 2C:25-21b provides that an investigating police officer "may" arrest and file a criminal complaint against a perpetrator where the officer has probable cause to believe an act of domestic violence has been committed but there is no sign of injury. We cannot discern from the record on appeal which section was invoked by the arresting officer.
[3] A transcript of the municipal court proceedings and the judgment of municipal court conviction are not contained in the record on appeal.